[No. F004944. Fifth Dist. Apr. 2, 1985.]

MICHAEL HOWARD LUHDORFF, Petitioner, v.
THE SUPERIOR COURT OF TULARE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Gerald F. Sevier, Public Defender, Neal Pereira, Assistant Public Defender, and Hugo J. Loza, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, Robert D. Marshall and Eileen Ceranowski, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**HANSON (P. D.), J.**—The prosecution seeks access to written records relating to conversations between petitioner and Julio Gramajo, a clinical social worker.

An information filed in Tulare County Superior Court charged petitioner with burglary (Pen. Code, § 459), kidnaping (Pen. Code, § 207, subd. (a)), forcible rape (Pen. Code, § 261, subd. 2), assault with intent to commit rape (Pen. Code, § 220), and unlawful intercourse with a female under age 18 (Pen. Code, § 261.5). It was further alleged petitioner personally used a firearm in violation of Penal Code section 12022.5 in four of the charged offenses.

The district attorney filed a motion to deny the psychotherapist-patient privilege (Evid. Code, §§ 1010-1028) and discover communications between petitioner and Julio Gramajo. The court ruled the communications did not fall within the psychotherapist-patient privilege and even if they did, the records indicated petitioner was a danger to others, i.e., the victim, and therefore the documents were discoverable. However, the court noted the probability that release of these records would have a devastating effect on petitioner's defense. Therefore, release of the records was stayed to enable petitioner to seek relief in this court.

Petitioner filed a petition for a writ of mandamus and/or prohibition. We ordered petitioner's trial stayed pending resolution of the petition for a writ.

## FACTS

Julio Gramajo is a clinical social worker employed full time at Kings View Mental Health Services for Tulare County. He is not licensed to practice medicine and is not a licensed psychologist or social worker. He has a master's degree in social work and has done graduate work in psychology. He has served two internships in psychiatric units of area hospitals. At Kings View, Gramajo carries a regular caseload, meeting with clients on a regular basis of one to two times per week.

Gramajo conducts the initial interview with clients, looking for reactions and behavior patterns in order to arrive at a treatment plan. Gramajo diagnoses each client's emotional problem and determines what form of treatment would be best suited for the problem.

Gramajo operates under the supervision of Dr. Judson Smith, the adult services director of the center and a psychologist. While Gramajo does the hands-on treatment, Dr. Smith or a center psychiatrist may override his plans. Gramajo always gets authorization for his treatment plan before implementation.

Gramajo testified he counsels patients but someone above him ultimately controls or has charge of the particular case. However, Gramajo also stated he does not always tell patients this because he is not required to do so; he could not recall if he told petitioner. Gramajo was sure he did not tell petitioner he was a psychiatrist, a licensed psychologist, a licensed social worker, or a doctor, and petitioner never referred to Gramajo as "doctor." Petitioner was under Gramajo's treatment throughout the entire three months' period he attended sessions at the clinic. In petitioner's case, Gramajo made a diagnosis and set up the treatment plan.

Dr. Smith testified he reads Gramajo's admission summaries and progress notes on each patient and meets at least weekly with Gramajo to discuss the various cases and to advise him as to procedures when questions arise. Dr. Smith has never treated petitioner but has reviewed petitioner's records. Dr. Smith testified that the social worker, the psychologist and the psychiatrist usually work as a team. It is common practice for both the psychiatrist and Dr. Smith to approve the treatment plan proposed by the social worker.

Petitioner testified he went to Kings View with the expectation of seeing a psychiatrist. He spoke with Gramajo about getting help with his emotional

problems. Although he never saw diplomas or anything to indicate Gramajo was a psychiatrist, psychologist, or licensed social worker, he assumed Gramajo to be a doctor, although Gramajo never told him he was one. Gramajo advised petitioner how to alleviate his problems and petitioner thought Gramajo knew what he was doing.

Petitioner did not graduate from high school but received a general education degree. No one at Kings View ever explained to petitioner the differences or distinctions in the work of a psychiatrist, psychologist, or social worker. Petitioner claimed he was unaware of any differences before hearing Dr. Smith explain in court. On cross-examination, petitioner stated he assumed he was being treated by a psychiatrist because he was at a mental health clinic and from the way Gramajo talked with him.

DISCUSSION

I

*The Records Are Privileged Under the Psychotherapist-patient Privilege.*

■ Evidence Code[1] section 1012 defines a confidential communication between a patient and psychotherapist as: ". . . information, including information obtained by an examination of the patient, transmitted between a patient and his psychotherapist in the course of that relationship and in confidence by a means which, so far as the patient is aware, discloses the information to no third persons other than those who are present to further the interest of the patient in the consultation or *those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose* for which the psychotherapist is consulted, . . ." (Italics added.)

The language of section 1012 plainly indicates that communications made by patients to persons reasonably necessary to assist psychiatrists and psychologists in the treatment of the patient's mental disorder come within the privilege.

In *People* v. *Gomez* (1982) 134 Cal.App.3d 874 [185 Cal.Rptr. 155], the defendant alleged statements made to family court student interns were privileged. The court noted the privilege extended to virtually every licensed class of therapist but held it did not apply to student interns. (*Id.,* at pp. 880-881.) The court went on to state, however, that communications to student

---

[1]All statutory references are to the Evidence Code unless otherwise indicated.

interns could be privileged if the students were working under the supervision of a therapist to whom the privilege attached.

"We can assume without deciding that under some circumstances, communications to a student intern could be privileged under Evidence Code sections 1010 and 1014.

"In this case, the only offer of proof was that Copple and Raschmann were psychology students 'employed as interns with the Family Court Services Office and engaged . . . in marriage counseling services . . . conciliation counseling and child custody investigations.'

"No offer of proof was made that either student was working under the supervision of a licensee to whom the privilege does attach . . . ." (*Id.*, at p. 881, fn. 3.)

Here, although Gramajo was not a therapist to whom the privilege attached, he worked under such a person generally, and petitioner's case was ultimately controlled and supervised by persons to whom the privilege attached.

Gramajo testified he initially interviewed clients looking for reactions and behaviors in order to devise a "diagnosis and a treatment plan." The treatment plan was then approved by his supervisor, Dr. Smith, a licensed clinical psychologist, or by a center psychiatrist. Gramajo needed their approval to implement his treatment plan.

Dr. Smith testified he read Gramajo's admission summaries and progress notes and met with him at least weekly to discuss cases, to advise as to procedures and to evaluate Gramajo's performance. Dr. Smith approved all treatment plans and occasionally made suggestions as to changes. Gramajo worked with Dr. Smith and a health services psychiatrist in a team effort for all patients. Gramajo was responsible and usually would do only individual counseling, while medical treatment of a patient was controlled by a psychiatrist at the health center.

Gramajo clearly falls within the category of persons reasonably necessary for the transmission of information or the accomplishment of the purpose for which the psychotherapist is consulted.

Furthermore, the language of section 1012 is almost identical to the language of section 952,[2] defining a confidential communication between at-

---

[2]Section 952 defines a confidential communication between client and lawyer as "information transmitted between a client and his lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, . . ."

torney and client, and section 992,[3] defining a confidential communication between a physician and patient. It is reasonable that the statutory provisions be similarly interpreted.

In *People* v. *Canfield* (1974) 12 Cal.3d 699 [117 Cal.Rptr. 81, 527 P.2d 633], the defendant was required to give a financial statement to aid in the determination of whether or not he qualified for the services of the public defender's office. Defendant was interviewed in jail for the public defender's office by a law school graduate awaiting bar results. The graduate spoke with defendant about his finances and had him sign the financial eligibility form. (*Id.*, at pp. 703-704.) The court held the financial eligibility statement was protected by the attorney-client privilege. "It is clear from the circumstances under which the statement was given that it was given in confidence (see Evid. Code, § 952) and that defendant's purpose was to retain the public defender to represent him in the criminal proceedings against him. Under sections 951 and 954 of the Evidence Code, therefore, any disclosures made by defendant in the course of the interview were privileged and could not be revealed without his consent." (*Id.*, at p. 704, fns. omitted.) The court's decision was based on the express language of section 952 and its belief that adequate legal representation required full disclosure of the facts by the client to his attorney, and unless the client knows his lawyer cannot be compelled to reveal what he is told, the client will suppress facts he thinks are unfavorable. (*Id.*, at pp. 704-705.) Similarly, that the psychotherapist-patient relationship be of an open and confidential character is necessary to promote full disclosure by the patient to facilitate adequate treatment and cure.

Further, communications made to an attorney's experts or investigators are protected by the attorney-client privilege. In this regard, Gramajo was, at least in part, an investigator, questioning petitioner in order to arrive at a proper treatment plan to be approved by his superiors.

Under the physician-patient privilege, disclosure of confidential communications to persons reasonably necessary to promote the patient's treatment is protected. In *Blue Cross* v. *Superior Court* (1976) 61 Cal.App.3d 798 [132 Cal.App.3d 635], the court held that the privilege applied to the identities and ailments of patients recorded in the claims file of a prepaid health

---

[3]Section 992 defines a confidential communication between physician and patient as "information, including information obtained by an examination of the patient, transmitted between a patient and his physician in the course of that relationship and in confidence by a means which, so far as the patient is aware, discloses the information to no third persons other than those who are present to further the interest of the patient in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the physician is consulted, . . ."

care plan. The court ruled that coverage determinations necessarily called for disclosure to the plan of the patient's name and ailments, and that the disclosure of such information to accomplish payment was reasonably necessary in achieving the consultation's diagnostic and treatment purposes. (*Id.*, at p. 801.) Surely, if the physician-patient privilege, which is less inclusive than the psychotherapist-patient privilege, goes so far as to protect patient information within the records of the patient's insurance carrier, the disclosures made by petitioner to Gramajo are within the protection afforded by the psychotherapist-patient privilege.

The definition of psychotherapist is found in section 1010,[4] and includes a person reasonably believed by the patient to be authorized to practice medicine who devotes, or is reasonably believed by the patient to devote, a substantial portion of his time to the practice of psychiatry. The evidence reveals that Gramajo was not a psychiatrist at the time of the communication between himself and appellant. ■■ ■■■■ Whether petitioner reasonably believed Gramajo to be a psychotherapist within the meaning of section 1010, subdivision (a),[5] presents a question which we need not address because we grant the relief sought by petitioner on other grounds.

## II

*Section 1024 Does Not Negate the Privilege.*

■ It is the duty of the court to decide if the psychotherapist-patient privilege applies. (See §§ 914, subd. (a), 400-406.) However, section 1024

---

[4]Section 1010 provides "As used in this article, 'psychotherapist' means: [¶] (a) A person authorized, or reasonably believed by the patient to be authorized, to practice medicine in any state or nation who devotes, or is reasonably believed by the patient to devote, a substantial portion of his or her time to the practice of psychiatry. [¶] (b) A person licensed as a psychologist under Chapter 6.6 (commencing with Section 2900) of Division 2 of the Business and Professions Code. [¶] (c) A person licensed as a clinical social worker under Article 4 (commencing with Section 9040) of Chapter 17 of Division 3 of the Business and Professions Code, when he or she is engaged in applied psychotherapy of a nonmedical nature. [¶] (d) A person who is serving as a school psychologist and holds a credential authorizing such service issued by the state. [¶] (e) A person licensed as a marriage, family and child counselor under Chapter 13 (commencing with Section 4980) of Division 2 of the Business and Professions Code."

[5]Petitioner asserts his reasonable belief on the basis that he went to the clinic for help with his emotional problems, and he assumed from the situation that he was dealing with a psychiatrist. Petitioner further testified he did not know the differences in a psychiatrist, psychologist, and social worker.

Gramajo testified he did not inform the petitioner that he was a psychiatrist, licensed psychologist or licensed social worker, but possibly told petitioner that someone above him was in control of the case: he never represented himself to the petitioner as a doctor.

We recognize "the psychotherapist-patient privilege is to be liberally construed in favor of the patient." (*Roberts* v. *Superior Court* (1973) 9 Cal.3d 330, 337 [107 Cal.Rptr. 309, 508 P.2d 309].)

provides: "There is no privilege under this article if the psychotherapist has reasonable cause to believe that the patient is in such mental or emotional condition as to be dangerous to himself or to the person or property of another and that disclosure of the communication is necessary to prevent the threatened danger."

The only evidence concerning any dangerous propensity of petitioner was Gramajo's testimony that petitioner stated several times that he wanted to commit suicide, and Gramajo's notes, received by the court and sought to be disclosed, summarizing his meetings with petitioner, stating in general petitioner's occasional statements concerning suicide and his one-time expression of anger toward his girl friend for testifying against him. Gramajo testified in court that petitioner never at any time said anything against any other person. Gramajo inferred he did not believe petitioner to be a danger to others. (§ 1024.)

The court decided, contrary to the evidence and the reasonable belief of Gramajo, that even if the privilege applied to the communications of petitioner and Gramajo, the records indicated petitioner was a danger to other persons, in particular to the alleged victim. The court stated the records did not indicate petitioner to be a danger in the future, but that based on petitioner's past conduct, yet unproved, the court considered him dangerous. The court's conclusion was based solely on petitioner's alleged past conduct with the victim.

"MR. LOZA [Defense counsel]: Just so that I understand—that I understand the Court correctly, the Court's saying from those reports the Court would be inclined to allow those reports to be released because contained therein is evidence that he would present a danger or that he has made comments that would lead someone to believe that he would be a danger to this girl?

"THE COURT: Not in the future, but he has been in the past, and the only—the only way that I can determine future dangerousness is by looking at past behavior.

"And certainly if someone does something once, what's to keep him from doing it again? Rape is an act of violence, it involves motives of violence [sic] revenge. It involves all sorts of motives, and if a person harbors bad feelings once they're likely to have 'em, and continue to have 'em unless they're resolved in some way.

"And the only way I can say is that—is to reason back that this act happened. I realize as I've said before, that this involves a reasoning to the

effect that—in effect you're making a preliminary judgment that some crime was committed, but this is necessarily involved.

"MR. LOZA: But there's nothing in the reports that says that he made any threats or any comments that would lead anyone to believe that he in the future intended to commit any violent act on the person of—

"THE COURT: Well, that would disclose part of what's been held, but there's no direct—

"MR. LOZA: Okay.

"THE COURT: —indication of that. No, you're right."

The court's reason for finding dangerousness is not supported by the record. The only evidence presented was that petitioner made statements in the past concerning suicide. There is nothing contained in the report or the hearing testimony to support the court's conclusion that petitioner is a danger to the alleged victim. The court's finding is thus an abuse of discretion.

Respondent cites *People* v. *Hopkins* (1975) 44 Cal.App.3d 669, 674 [119 Cal.Rptr. 61], for the proposition that petitioner may not suppress his communications with Gramajo because they indicate dangerousness. However, *Hopkins,* in allowing the discovery of psychotherapist records, first quotes the California Law Revision Commission's official comment to proposed section 1024 which states: " 'Although this exception might inhibit the relationship between the patient and his psychotherapist to a limited extent, it is essential that appropriate action be taken if the psychotherapist becomes convinced during the course of treatment that the patient is a menace to himself or others and the patient refuses to permit the psychotherapist to make the disclosure necessary to *prevent the threatened danger.'* " (Italics added.) The reviewing court then held that from the *evidence,* "the trial court reasonably concluded that the psychotherapist had reasonable cause to believe" the defendant could be dangerous and disclosure was necessary to prevent *threatened* danger. (*Id.,* at p. 674.)

Here, there was no evidence presented that petitioner was a danger to other persons or property. The records indicate petitioner's suicidal feelings resulted from remorse and feelings of guilt; there is no indication petitioner ever took or was going to take affirmative steps concerning these feelings. Further, the testimony of Gramajo indicates he and the staff at the clinic did not consider petitioner presently or in the future to be a danger to himself; obviously, they concluded there was no "reasonable cause" to believe oth-

erwise. (§ 1024.) The evidence does not support the judge's refusal to apply the privilege.

The records are privileged.

A writ of mandate is granted; the trial court is directed to set aside its order allowing the release of petitioner's records at Kings View Mental Health Services for Tulare County and to enter a new order denying the prosecution's motion for discovery.

Brown (G. A.), P. J., and Woolpert, J., concurred.