[Civ. No. 60329. Second Dist., Div. Four. Jan. 21, 1981.]

ARLYN R., a Minor, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Heroico M. Aguiluz for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, District Attorney, Donald J. Kaplan and George M. Palmer, Deputy District Attorneys, for Real Party in Interest.

OPINION

FILES, P. J.—This is a mandate proceeding to compel the juvenile court to dismiss a petition filed under Welfare and Institutions Code section 602 charging the petitioner with petty theft (Pen. Code, § 484). Since the petition is based upon an unusual chain of events preceding and following the filing of the petition, we must relate the procedural facts in some detail. The following recital is from the People's return to the alternative writ, including exhibits and transcripts, none of which has been contradicted by traverse or otherwise in this proceeding.

On December 16, 1979, a security guard in a department store observed petitioner, who was then 14 years old, take a bottle of cologne from a counter. Her 19-year-old companion, Valencia, took a clutch purse. The two entered a dressing room together, then left the store without paying for the merchandise. Outside the store the guard approached and inquired why they had not paid. Valencia opened her purse and showed the merchandise. The two were arrested and taken to the Lakewood sheriff's station. Petitioner admitted taking the cologne, but took no responsibility for the other item. Because she had no prior record and had freely admitted the theft, petitioner was counselled and released. The interoffice memorandum of the sheriff's department contains this language: "Subject was released to her parents. J.I.F. form was submitted. No further action is deemed necessary by this detail. This case will stand inactive and cleared."

Valencia was tried on petty theft charges in a municipal court on April 24, 1980. Petitioner's father represented Valencia as her attorney. At that trial petitioner, called as a witness on behalf of Valencia, testified that she, petitioner, had stolen both of the items and that she hid them in Valencia's purse; and that Valencia knew nothing about the theft until they were stopped outside the store. The jury found Valencia not guilty.

The deputy district attorney who had tried Valencia's case then communicated with the sheriff's department,[1] which on May 7, 1980, filed an application under Welfare and Institutions Code section 653 with the probation department alleging that petitioner had violated Penal

---

[1] An interoffice memorandum in the sheriff's department dated May 7, 1980, reported the results of Valencia's trial and concluded: "Both Judge Hanki and Deputy District Attorney Rugnetta are desirous that further action be taken as to the subject. A non-detained petition is submitted on the subject's behalf."

Code section 484.[2] The deputy probation officer to whom the case was assigned met with petitioner and her parents on May 21. At that meeting, petitioner's father stated that he did not want his daughter to discuss the matter and that neither of them wished to participate in the investigation. The declaration of the deputy probation officer is attached to the return as an exhibit. In that document the deputy explained, "The probation supervision plan under section 654 of the Welfare and Institutions Code was not considered at that time in that Arlyn...and her father/attorney chose not to provide the information needed by this officer for such consideration."

The deputy concluded "that the best interests of the minor would be served by the adjudication of this matter in a court of law."

On May 22 a petition request was forwarded from the probation officer to the district attorney. After a review by that office, a petition was filed on June 17.

Petitioner was arraigned the same day, with her father appearing as her attorney. The court inquired whether the father wanted to discuss voluntary probation as a diversionary alternative. The father replied "We believe that is not necessary, your honor, because we do not believe that the minor is guilty." The court then entered the denial and, by agreement with the father, set the adjudication for July 24. Petitioner and her parents were directed to return on that date.

On July 24 the witnesses were present and the district attorney was ready to proceed. Petitioner's father was not present but an associate appeared to tell the court that the father was absent from the state on urgent business and that she—the associate—was not acquainted with the case. The court continued the matter to July 31 for trial setting. On July 31, at the request of the father, the case was put over to September 3.

The father then filed a demurrer to the petition and a motion to dismiss for lack of a speedy trial, giving notice that they would be heard on September 3 at 9:30 a.m. On that date petitioner and her father were present in court. The demurrer was overruled and the motion to dismiss was denied. The father then requested a continuance of the ad-

---

[2]Section numbers refer to the Welfare and Institutions Code unless another code is indicated.

judication hearing upon the ground that he was not ready for trial. He also stated that he had not anticipated that the juvenile court would deny him "the right to seek redress before the higher courts" before it commenced the adjudication hearing. The court denied the motion for a continuance, and ordered petitioner and counsel to remain in the building.

At 1:30 p.m. the juvenile court and the district attorney were ready to begin the trial, but petitioner and her father were absent. Later in the afternoon the father returned to the juvenile court and explained that he had prepared and filed a petition in the Court of Appeal. The juvenile court stated that the trial would commence the following day, and directed that petitioner and her father be present at 9 a.m.

On September 4 at 9 a.m. the court was open and the district attorney was present with witnesses. Neither petitioner nor her father appeared that day.

The petition for writ of mandate which was filed in this court on the afternoon of September 3 was considered and denied on September 4. A petition for hearing was filed in the Supreme Court on September 10. Neither the petition for a writ nor the petition for a hearing disclosed to the Supreme Court the circumstances which had led to the June filing in the juvenile court or the tactics which had delayed the adjudication hearing.

On September 17 the Supreme Court made its order granting a hearing, and staying the adjudication, and retransferring the case to the Court of Appeal "with directions to issue an alternative writ. . . ." We have complied with that direction.

We turn now to the various theories offered by petitioner in the juvenile court and in this court to prevent an adjudication hearing.

Petitioner's demurrer to the petition was upon the following ground: "The petition does not conform to the provisions of §§ 626, 652 and 653 of the Welfare and Instructions [*sic*] Code."

None of the three cited sections has anything to do with the form or content of the petition which commences a proceeding to declare a minor a ward of the juvenile court. The petition filed in this case was in the proper form, sufficient to initiate the proceeding. Demurrers, when

appropriate, attack defects appearing on the face of a pleading. There was no such defect here, and the demurrer was properly overruled.

The code sections which petitioner refers to describe the procedures to be employed prior to the filing of the petition. However, the steps taken by the sheriff, the probation department and the district attorney, as recited above, were all in conformity with the requirements of the cited sections.

Section 626 specifies the alternatives available to an officer who takes a minor into custody. One of those options is to release the minor. The other options are to deliver the minor to the custody of the county probation officer, or to give the minor a written notice to appear before the county probation officer at a specified time and place. ▮ It seems to be petitioner's theory that when the deputy sheriff decided to release petitioner on December 16, 1979, and wrote in his report "The case will stand inactive and cleared," the legal effect was the equivalent of an acquittal or a grant of immunity. Nothing in the code or elsewhere in the law gives any such authority to the sheriff.

Petitioner cites as authority a sentence in a practice handbook which states "Release means that the matter has come to an end, or, at most, that the minor will remain under informal supervision of the police department." (Cal. Juvenile Court Practice (Cont.Ed.Bar 1968) § 34, p. 45.) The quoted sentence is simply a statement of what usually happens as a result of the officer's release. If the arresting officer does not submit any report to the probation officer, it is unlikely that anyone else will.

Welfare and Institutions Code sections 652 and 653 require the probation officer to make such investigation as he deems necessary to determine whether proceedings in the juvenile court should be commenced.[3] If he so determines, he must refer the matter to the district attorney who, under section 653, has discretionary power to institute proceedings.

---

[3]Section 652: "Whenever the probation officer has cause to believe that there was or is within the county, or residing therein, a person within the provisions of Section 601 or 602, the probation officer shall immediately make such investigation as he deems necessary to determine whether proceedings in the juvenile court should be commenced."

Section 653: "Whenever any person applies to the probation officer to commence proceedings in the juvenile court, such application shall be in the form of an affidavit

Action by a peace officer is not indispensable to the commencement of proceedings in the juvenile court under section 602. Section 653, is, by its terms, applicable "Whenever any person applies to the probation officer to commence proceedings in the juvenile court ...." Section 655 creates procedures whereby "any person" who has applied to the probation officer to commence proceedings may also apply to the district attorney or to the juvenile court if the probation officer fails to act.

*Marvin F.* v. *Superior Court* (1977) 75 Cal.App.3d 281 [142 Cal.Rptr. 78], cited by petitioner, is not in point. In the *Marvin* case the record showed an agreement between the Alameda County Probation Department and the district attorney's office that whenever a police officer so requested, the probation department was obliged to refer the case to the prosecuting attorney. That arrangement had the effect of bypassing the function of the probation officer in making his own investigation and recommendation before the matter reached the prosecuting attorney. In the present case there was no agreement of the kind described in *Marvin*. The sheriff's department made the application authorized by section 653, and the probation department made its own investigation and recommendation before the matter was taken to the district attorney for prosecution.

◼ Petitioner's motion to dismiss the petition for lack of a speedy trial was based upon general statements taken from criminal cases in-

alleging that there was or is within the county, or residing therein, a minor within the provisions of Section 300, 601, or 602, or that a minor committed an offense described in Section 602 within the county, and setting forth facts in support thereof. The probation officer shall immediately make such investigation as he deems necessary to determine whether proceedings in the juvenile court should be commenced. If the probation officer determines that proceedings pursuant to Section 650 should be commenced to declare a person described in Section 602 to be a ward of the juvenile court, the probation officer shall cause the affidavit to be taken to the prosecuting attorney. The prosecuting attorney shall within his discretionary power institute proceedings in accordance with his role as public prosecutor pursuant to subdivision (b) of Section 650 of this code and Section 26500 of the Government Code. [¶] If the probation officer does not take action under Section 654 and does not file a petition in juvenile court within 21 court days after such application, or in the case of an affidavit alleging that a minor committed an offense described in Section 602 or alleging that a minor is within Section 602, does not cause the affidavit to be taken to the prosecuting attorney within 21 court days after such application, he shall endorse upon the affidavit of applicant his decision not to proceed further and his reasons therefor and shall immediately notify the applicant of the action taken or the decision rendered by him under this section. The probation officer shall retain the affidavit and his endorsement thereon for a period of 30 days after such notice to applicant."

volving postindictment delay. Before discussing the law we refer back to the portions of the record which put the issue in context.

First, the only delay to which petitioner did not consent is the period from the date of the theft December 16, 1979, to the filing of the petition under section 602 on June 17, 1980. The record shows that, on June 17, petitioner's counsel consented to the July 24 date for adjudication, and that he requested all of the subsequent postponements. Sections 352 and 682 authorize postponements in the absence of an objection by the minor's counsel. (See also rule 1352 (b), Cal. Rules of Court.)

Second, contrary to petitioner's argument, the prefiling delay is not "unexplained." What occurred during that six months period has been pointed out step by step.

Third, no prejudice has been shown or even alleged.

In *Scherling v. Superior Court* (1978) 22 Cal.3d 493, 504, 505 [149 Cal.Rptr. 957, 585, P.2d 219], the court summarized the principles governing the right to speedy trial in criminal cases: "... In summary, under California as well as federal law, the right to a speedy trial clearly attaches after an arrest or the filing of an indictment or information. [Citation.] [¶] Unlike federal law, however, this state has extended the right to the preindictment and prearrest stage, holding that it attaches under article I, section 15, of our Constitution after a complaint has been filed. [Citation.] But the consequence of a violation depends upon the stage at which a violation of the right occurs. The right to a speedy trial following the filing of an indictment or information and the time limitations applicable thereto are set forth by statute [citation] and a violation of the statute is presumed to be prejudicial. [Citation.] A violation at a prior stage depends upon a balancing of the prejudicial effect of the delay and the justification therefor....[¶] We affirm our determination in *Archerd*, [*People v. Archerd* (1970) 3 Cal.3d 615 (91 Cal.Rptr. 397, 477 P.2d 421)] that due process is the appropriate test to be applied to a delay occurring after a crime is committed but before a formal complaint is filed or the defendant is arrested. But regardless of whether defendant's claim is based on a due process analysis or a right to a speedy trial not defined by statute, the test is the same, i.e., any prejudice to the defendant resulting from the delay must be weighed against justification for the delay." [Fns. omitted.]

In the present case we are discussing a six-month delay which preceded the filing of any accusatory pleading. In criminal law terms, it is preindictment and precomplaint delay. It is therefore unnecessary to discuss the cases involving postindictment delay, cited by petitioner.

Petitioner was arrested on the day the theft occurred, but she was immediately released because it appeared to the deputy sheriff that no judicial proceeding was necessary. The sheriff had no prosecutorial responsibility, and his decision had no legal effect on any subsequent event. The matter first came to the attention of the probation officer, who has a statutory obligation to act, on May 7 when the sheriff filed an application under Welfare and Institutions Code section 653.

The probation officer then made an investigation, as sections 652 and 653 require. The next succeeding events—the forwarding of a petition request to the district attorney on May 22 and the filing of a petition in the juvenile court on June 17—cannot be regarded as excessively delayed, considering the fact that the minor was not detained. The time lapse between the first information received by the probation officer and the filing of the petition in juvenile court was 41 days.

In evaluating the time lapse in this case it is pertinent to observe that a juvenile court proceeding is not to punish an offender for a specific offense, as in a criminal case, but to benefit the minor. One specific purpose of the juvenile court law is "to impose on the minor a sense of responsibility for his own acts." (§ 202.) Although a petition filed under section 602 is based upon a charge of a specific law violation, the minor's need for judicial assistance may appear from a course of events beyond that specifically alleged act. The facts shown in the record here are illustrative. In December petitioner freely admitted her offense and appeared not to require any assistance other than closer parental supervision. In May, both petitioner and her father refused to discuss the situation or to provide any information to the probation officer.[4] It was against this background that the probation officer recommended court proceedings and the district attorney decided to file.

In assessing the legal effect of the time lapse between the December 16 offense and the filing of the petition on June 17, we apply the

---

[4]The declaration of the deputy probation officer who conducted the May investigation states: "I was aware that Arlyn...had testified in municipal court in the matter of an adult alleged to be a companion in this matter, however that knowledge was not contributory to my decision regarding appropriate action in behalf of Arlyn...."

standard which has evolved in the criminal law, that is, "any prejudice to the defendant resulting from the delay must be weighed against justification for delay." (*Scherling* v. *Superior Court, supra*, 22 Cal.3d at P. 505.) In this case the prejudice is nil and the delay came about only because of a well-meaning deputy sheriff's belief that the probation officer would not be interested in this minor.

The balance of these factors amply supports the juvenile court's decision not to dismiss the proceeding.

The petition is denied.

Kingsley, J., and McClosky, J., concurred.

A petition for rehearing was denied February 18, 1981, and petitioner's application for a hearing by the Supreme Court was denied April 1, 1981. Bird, C. J., was of the opinion that the application should be granted.