[No. C002577. Third Dist. July 20, 1989.]

In re KEVIN F., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
KEVIN F., Defendant and Appellant.

**COUNSEL**

Patrick S. McGovern, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Maureen Daly, Assistant Attorney General, and Laura Heidt, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**PUGLIA, P. J.**—The juvenile court sustained a petition (Welf. & Inst. Code, § 602) charging the minor, Kevin F., with arson causing great bodily injury. (Pen. Code, § 451, subd. (a).) He was committed to the California Youth Authority (CYA) for a maximum period of confinement not to exceed nine years (Welf. & Inst. Code, § 726). The principal thrust of Kevin's appeal is a challenge to the admission in evidence of a confidential communication to his psychotherapist in which he confessed to the crime. ██ We shall hold that the trial court did not abuse discretion in finding the communication admissible within the exception to the privilege because the psychotherapist had reason to believe Kevin constituted a danger to others. Finding no other error, we shall affirm.

On May 10, 1982, Cindy Ames and her son were seriously injured in a fire at their residence in Truckee. Both sustained fractured bones and Cindy suffered third degree burns over half of her body. Expert testimony established the fire was intentionally ignited by someone using gasoline and matches. At the time of the fire, Kevin lived with his parents in the Ameses' neighborhood. His mother and Cindy Ames were friends and coworkers.

In November 1982, the juvenile court committed Kevin for an unrelated offense to a residential drug and alcohol treatment program in Napa called "Our Family." In February 1983, during a mandatory counseling session with his psychotherapist, Carolyn Hobbs, Kevin stated that during the previous year he had stolen money from the home of a family friend in Truckee; although he knew people were inside the house, he set fire to it in order to destroy incriminating evidence of the theft. He believed the friend and her child received second and third degree burns in the fire. Hobbs did not reveal this conversation to anyone outside the staff or record it in writing until June 10, 1983, when she disclosed it in a report to Kevin's probation officer.

On March 12, 1986, a petition was filed pursuant to Welfare and Institutions Code section 602 charging Kevin with arson. Kevin was then 19 years old, married, and living in Florida.

I

At the jurisdictional hearing, Hobbs testified to Kevin's confession to her. There was no evidence other than his confession linking Kevin to the arson.

Kevin contends the juvenile court erred in receiving evidence of his confession because it was a privileged communication under Evidence Code section 1014.[1] (All further statutory references to sections of an undesignated code are to the Evidence Code.) The People argue that the communication comes within the exception to the privilege set forth in section 1024 which states: "There is no privilege under this article if the psychotherapist has reasonable cause to believe that the patient is in such mental or emotional condition as to be dangerous to himself or to the person or property of another and that disclosure of the communication is necessary to prevent the threatened danger."

Prior to trial the People moved "to deny [the] psychotherapist-patient privilege" on the basis of the " 'dangerous patient' exception specified in Evidence Code section 1024." After receiving testimony and documentary evidence the court concluded (1) that Hobbs was a psychotherapist within the meaning of section 1010 and (2) that Hobbs's disclosure of Kevin's

---

[1] Section 1014 provides in relevant part: "Subject to Section 912 and except as otherwise provided in this article, the patient, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist if the privilege is claimed by: [¶] (a) The holder of the privilege; [¶] (b) A person who is authorized to claim the privilege by the holder of the privilege; or [¶] (c) The person who was the psychotherapist at the time of the confidential communication, but such person may not claim the privilege if there is no holder of the privilege in existence or if he is otherwise instructed by a person authorized to permit disclosure."

confession was justified under section 1024 as necessary to prevent threatened danger. Kevin challenges only the latter conclusion.

The People's evidence in support of their motion established that Kevin was not responding to the treatment program at Our Family and it was determined he should be transferred to a more secure facility where he would receive more intensive treatment. Kevin admitted to Hobbs that he had set fire to Ames's residence and was fascinated with fire. Kevin was suspected of setting a fire in a trashcan in the bathroom at Our Family. Based on this information, Hobbs believed Kevin presented a danger to the property and residents of Our Family. Her written account of June 10, disclosing Kevin's confession to setting the Ames fire, was included in a report to Kevin's probation officer. The purpose of the report was to explain the reasons for Kevin's discharge from Our Family and inform the probation officer of his dangerous propensities as a necessary consideration in determining his next placement in a more restrictive institutional setting.

■ The trial court's conclusion that Hobbs's disclosure of Kevin's confession was justified under section 1024 is reviewable under an abuse of discretion standard. (*Luhdorff* v. *Superior Court* (1985) 166 Cal.App.3d 485, 494 [212 Cal.Rptr. 516].) ■ There was substantial evidence before the trial court that Hobbs had reasonable cause to believe Kevin's mental and emotional condition rendered him dangerous to the residents and property of Our Family and that this condition required disclosure of his confession to avert future threatened danger upon his transfer to a more secure facility. Accordingly the trial court did not abuse discretion in concluding Kevin's confession to Hobbs was not privileged.

Citing *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166], Kevin argues that section 1024 applies only when the patient poses a danger to a readily identifiable victim (see also *Mavroudis* v. *Superior Court* (1980) 102 Cal.App.3d 594 [162 Cal.Rptr. 724]); since no such individual is disclosed by the evidence, the trial court erred in ruling section 1024 applicable. *Tarasoff* however was concerned with the duty of a psychotherapist alerted by confidential disclosures of his patient to warn a specific individual whom he had reason to believe was endangered by his patient. *Tarasoff* delineated the elements of a common law cause of action for negligent failure to warn in that context. *Mavroudis* involved the identical common law cause of action. As explained in *Mavroudis*: "The exception to the psychotherapist-patient privilege provided by section 1024 is applicable only if the specified conditions in the statute are present. *In an action such as this one, alleging that a defendant therapist has breached the duty of care enunciated in Tarasoff, section 1024 must be read in light of that decision.* The exception is

applicable if the court finds that, prior to the time of the injury complained of, the therapist determined, or reasonably should have determined, that the therapist's patient presented a serious danger of violence *to a readily identifiable victim* and the disclosure of confidential communications was necessary to prevent the threatened danger." (*Supra,* at p. 604, italics added.)

*Tarasoff* and *Mavroudis* made clear that a duty to warn overriding the psychotherapist-patient privilege arises only with respect to specifically identifiable and potentially endangered persons. It does not extend to the world at large. Thus a psychotherapist's failure to sound a general alarm alerting the public at large of his patient's unfocused dangerous propensities will not render the psychotherapist liable for negligent failure to warn. For that reason, section 1024 operates more narrowly in the context of a negligent failure to warn cause of action. However, we must apply it in the present context according to its plain language which refers not to a specifically identifiable individual but to "the person or property of another." (§ 1024.) As explained in the comment of the Law Revision Commission to section 1024: "Although this exception might inhibit the relationship between the patient and his psychotherapist to a limited extent, it is essential that appropriate action be taken if the psychotherapist becomes convinced during the course of treatment that the patient is a menace to *himself or others* and the patient refuses to permit the psychotherapist to make the disclosure necessary to prevent the threatened danger." (Cal. Law Revision Com. com., 29B West's Ann. Evid. Code (1966 ed.) § 1024, pp. 630-631 [Deering's Ann. Evid. Code (1986 ed.) § 1024, p. 213]; italics added.)

The residents of Our Family and the institution to which Kevin might be transferred were persons within the contemplation of section 1024 potentially threatened by Kevin's mental and emotional condition as revealed by his confession.

## II

Kevin contends that even if the section 1024 exception to the privilege applies, his confession should nevertheless be suppressed either for failure to give *Miranda* warnings, or on the basis of public policy.

■ As to the issue of *Miranda* warnings, Kevin was not interrogated about the arson by Hobbs nor did she attempt to elicit incriminating information. The trial court so found as a matter of fact. "Volunteered statements of any kind are not barred by the Fifth Amendment . . . ." (*Miranda* v. *Arizona* (1966) 384 U.S. 436, 478 [16 L.Ed.2d 694, 726, 86 S.Ct. 1602, 10 A.L.R. 974].) Since the trial court found on substantial evidence that

Kevin's confession was not the product of interrogation, we do not address the issue of whether Kevin was "in custody" at the Our Family facility.

■ Nor is there any public policy outside the statutory scheme pertaining to the psychotherapist-patient privilege (§§ 1014, 1024), which requires suppression of this statement. The Legislature has already balanced the competing interests. (*Tarasoff, supra,* 17 Cal.3d at pp. 440-441.) Kevin was not confronted with the dilemma presented in *In re Wayne H.* (1979) 24 Cal.3d 595, 601 [156 Cal.Rptr. 344, 596 P.2d 1], where the minor was bound to discuss a *particular* offense with the probation officer at peril otherwise of being detained. Apparently neither Hobbs nor anyone else at Our Family knew about the Truckee fire. Even though Kevin may have feared he would be "punished," or at least not advanced in the program by failing to cooperate in general or to deal openly with his incendiary propensities, he could with impunity simply have remained silent about the arson offense. For whatever reason, he chose of his own volition not to do so. *People* v. *Webster* (1971) 14 Cal.App.3d 739, 742 [93 Cal.Rptr. 260], is similarly distinguishable in that it involved interrogation by a peace officer about a particular crime.

### III

■ Kevin contends the delay between the May 1982 fire and the filing of the petition in March 1986 violates his right to due process. ■ Kevin claims that different legal principles apply to those charged as juveniles. As a general matter, this is untrue. (*Arlyn R.* v. *Superior Court* (1981) 114 Cal.App.3d 1025, 1031-1034 [171 Cal.Rptr. 151].) ■ In any event Kevin's complaint of delay founders because of a failure to establish prejudice. ■ "Prejudice is not presumed from delay which occurs before arrest or accusation, and unless the defendant establishes prejudice no justification need be shown." (*People* v. *Reeder* (1984) 152 Cal.App.3d 900, 910 [200 Cal.Rptr. 479].) ■ Kevin suggests because of pretrial delay he was 20 years old at the time of disposition, leaving no alternative to commitment to the CYA. Kevin's age, however, was not the primary reason for his commitment to CYA. The gravity of the offense, combined with his past record, was determinative.

■ Kevin seeks relief in Welfare and Institutions Code section 655 which provides that a complainant may apply to the district attorney to file a Welfare and Institutions Code section 602 petition within 10 days after receiving notice of the probation officer's denial of his request to do so. *Richard N.* v. *Superior Court* (1981) 116 Cal.App.3d 579 [172 Cal.Rptr. 512] held that the failure to comply with the time limits of section 655 weighed decisively in favor of dismissal of a petition filed by the district

attorney after the probation officer had declined a request for petition. (Pp. 585-586.) Section 655 is inapplicable here because there is no evidence the probation office was ever requested to file a petition against Kevin. In fact the evidence affirmatively suggests no such request was ever made.

■ An order of the juvenile court committing a minor to CYA may be reversed on appeal only upon a showing that the court abused its discretion. There is no abuse of discretion where the commitment is supported by substantial evidence on the record. (*In re Michael D.* (1987) 188 Cal.App.3d 1392, 1395 [234 Cal.Rptr. 103].) ■ The fact that arson of an inhabited dwelling is an extremely serious offense together with Kevin's previous history as a juvenile offender left no reasonable alternative to CYA commitment. Kevin had failed at several other less restrictive facilities, and continued thereafter to have serious problems. Moreover, a court-appointed psychologist who examined Kevin concluded that he continued to present a "serious danger to the community and to himself."

The judgment is affirmed.

Carr, J., and Sims, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 25, 1989.