Filed 6/17/14  In re Matthew W. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re MATTHEW W., a Person Coming Under the Juvenile Court Law. | B253779 (Los Angeles County Super. Ct. No. CK60333) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. T.W., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marguerite Downing, Judge.  Affirmed.

Ernesto Paz Rey, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

T.W. (mother) appeals from the dependency court's family law exit order[1] terminating jurisdiction over Matthew W.,[2] granting mother and father (G.G.) joint legal custody and G.G. sole physical custody, and imposing conditions on mother's visitation. Mother contends the court abused its discretion when it ordered visitation twice a week without also identifying a minimum duration for each visit, and required a monitor approved by G.G. for any in-person visitation. We conclude that the court's order does not constitute an abuse of discretion and therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2005, the court declared Matthew's older siblings, J.W. and B.J., dependents of the court based on mother placing the children in an endangering situation consisting of "mother flagging down a vehicle and throwing the child [B.J.], age two years old, into the vehicle of an unknown unrelated person. Further . . . mother was arrested, convicted and remains incarcerated for said conduct." Additionally, the court found mother and B.J.'s father had violent altercations that endangered the children. In October 2006, the court awarded mother sole physical and legal custody of B.J. and J.W.

In April 2013, the Department of Children and Family Services (Department) received an emergency referral reporting that mother was arrested on felony charges of child endangerment after driving under the influence of alcohol (DUI) with her children, E.H. and B.J., in the car. According to the incident report, mother was seen driving at night without her lights on. When she was subsequently stopped by a police officer, the officer observed that mother exhibited symptoms of intoxication and smelled of alcohol. Mother told the officer that she did not want to be arrested for DUI because she had prior arrests for DUI and did not want her children to see her arrested. Mother was driving on

---

[1] We use the term "exit order" to refer to Judicial Council forms JV-200 (Custody Order—Juvenile—Final Judgment) and JV-205 (Visitation Order—Juvenile).

[2] Matthew is the only one of mother's children involved in this appeal.

2

a license suspended for DUI and was on court probation. Breath tests were administered at the scene indicating readings of a blood alcohol content of .14 and .13 percent.[3]

A children's social worker (CSW) interviewed mother, who was in jail. Mother admitted drinking four to six ounces of straight vodka before driving with her children in the car. Mother said the children's maternal grandmother picked up the children following her arrest and was caring for them. She admitted she needed help with her abuse of alcohol and acknowledged drinking alcohol on weekends - about a pint of vodka with cranberry or a chaser. Mother said she previously participated in two substance abuse treatment programs - one an inpatient program as part of the treatment plan in her first dependency case, and another as the result of a DUI - but she never followed up with any aftercare or twelve-step meetings. She admitted having three DUI convictions between 2005 and 2008. The CSW assessed that the children were at a substantial risk of harm in mother's care "due to her ongoing pattern of alcohol abuse that has resulted in detrimental behavior to the children's safety and well-being."

G.G. lived separately from mother and reportedly had regular and consistent weekend visits with Matthew. G.G. had no interaction with mother when he dropped off or picked up Matthew at her cousin's house. G.G. was not concerned about Matthew while he was in mother's care because G.G. was not aware mother was still drinking. When he would pick up the child, Matthew was clean and had formula. When G.G. was in a relationship with mother for four to five months in 2012 prior to Matthew's birth, mother would consume alcohol to intoxication and become violent. G.G. said the children witnessed mother's behavior.

On May 7, 2013, the Department detained the children (J.W., B.J., E.H., and Matthew) from mother, but released Matthew to G.G. G.G. made arrangements for the maternal grandmother to care for Matthew during weekdays.

---

[3] Under California law, it is unlawful for an adult to operate a motor vehicle with a blood alcohol content of 0.08 percent or higher. (Veh. Code, § 23152.)

On May 10, 2013, the Department filed a petition alleging jurisdiction under Welfare and Institutions Code section 300, subdivisions (b) and (j), as to J.W. and Matthew, and under section 300, subdivision (b) as to B.J. and E.H.[4]  The petition alleges the children were at risk as a result of mother's substance abuse and driving while intoxicated with B.J. and E.H. in the car.  Matthew remained released to G.G.

On October 18, 2013, the Department recommended at disposition on Matthew's case that the court issue an order granting G.G. sole physical and legal custody of Matthew, with mother having supervised visitation, and terminating jurisdiction.  Mother executed and filed a waiver of rights, stating that she submitted to the petition on the basis of the CSW's reports.  Thereafter, the court sustained a first amended version of the section 300 petition, adding the allegation of jurisdiction under both subdivision (b) and (j) as to all the children.

The court continued the disposition hearing to November 20, 2013.  At the disposition hearing, mother stated she was not in agreement with the Department's recommendation because she believed the proposed disposition "would cut her out of this child's life."  She complained that G.G. had not visited or supported Matthew prior to her being arrested.  She wanted to reunify with all her children.

Matthew's counsel agreed with the Department's recommendation because there is no indication that continued supervision is necessary.  Matthew had been with G.G. for six months without any incidents being reported.  The Department's initial report indicated G.G. had regular and consistent weekend visits with Matthew before the court became involved.  Moreover, G.G. had arranged for Matthew to be cared for by the maternal grandmother, indicating he did not want to sever ties between mother and child.  He also established a good relationship with the maternal relatives and "there is no reason to believe that he is not going to allow mother to have contact with her child."

---

[4] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

4

The court declared Matthew a dependent of the court under section 300.  The court found "by clear and convincing evidence pursuant to [section] 361, that there is a substantial danger to [Matthew] if returned home to the physical custody of . . . mother."  The court terminated jurisdiction, giving mother and G.G. joint legal custody, and G.G. sole physical custody.  Regarding mother's visitation, the court stated "visitation will be set forth per the family law order."  The court stayed its order to December 9, 2013, for receipt and signing of the exit order.  Mother's counsel made a general objection to the court's disposition orders regarding Matthew.[5]

On December 9, 2013, the court signed an exit order prepared by G.G.'s counsel granting mother and G.G. joint legal custody, G.G. primary physical custody, and permitting mother "to have monitored visits two times per week, minimum." The order also indicated mother's monitor is to be approved by G.G.

On January 6, 2014, mother appealed.

**DISCUSSION**

Mother contends that the court abused its discretion in ordering visitation twice a week but failing to specify a minimum duration for each visit, and by requiring a monitor approved by G.G. for any in-person visitation.  We disagree.

**Notice of Appeal**

Mother is appealing from the court's dispositional orders and findings entered at the November 20, 2013 hearing.  Mother contends, and we agree, that we may liberally construe the notice of appeal as appealing from the December 9, 2013 hearing because the record makes it reasonably clear that mother is appealing from the exit order entered

---

[5] Mother's counsel stated, "Please note mother's objection to the disposition orders for Matthew."

5

at the December 9, 2013 hearing, and not the November 20, 2013 hearing.  The error mother is appealing from does not appear until the court enters the exit order prepared by G.G.'s counsel on December 9, 2013.  Also, an appeal from the December 9, 2013 order is timely.  (Cal. Rules of Court, rule 8.406 [notice of appeal must be filed within 60 days]; *In re Jonathon S.* (2005) 129 Cal.App.4th 334, 340.)  The Department is not prejudiced by our interpretation of the notice of appeal.  (*Vibert v. Berger* (1966) 64 Cal.2d 65, 67-68.)

## Forfeiture

We conclude that mother's contention regarding the visitation order was forfeited. Even if the contention is not forfeited, it is not meritorious.

A claim of error is forfeited on appeal if it is not raised in the trial court.  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 (*S.B.*).)  "The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." (*Ibid.*)  A claim of error is also forfeited if the objection raised is not specific enough to give the lower court an opportunity to correct the error.  (*In re E.A.* (2012) 209 Cal.App.4th 787.)  "General objections are insufficient to preserve issues for review. [Citation.]  The objection must state the ground or grounds upon which the objection is based.  [Citation.]."  (*Id.* at p. 790.)  The rationale behind the forfeiture rule is that it would be "inappropriate to allow a party not to object to an error of which the party is or should be aware[.]"  (*In re Dakota S.* (2000) 85 Cal.App.4th 494, 501.)  Dependency matters are not exempt from this rule.  (See, e.g., *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1338-1339 [failure to request court to order bonding study]; *In re Kevin S.* (1996) 41 Cal.App.4th 882, 885-886 [failure to challenge setting of § 366.26 permanency planning hearing when court determined that no reasonable reunification efforts were made].)

Mother concedes she did not explicitly make an objection to the visitation order regarding the duration of each visit or the fact that a monitor must be approved by G.G.

6

She maintains that her statement that placing Matthew with G.G. and then terminating jurisdiction "would cut her out of the child's life" is sufficient to preserve the issue.  The fact remains that mother failed to object below with specificity or request that the court clarify the visitation order.  She only made one additional but general objection at that November 20, 2013 hearing when mother's counsel stated, "Please note mother's objection to the disposition orders for Matthew."  Moreover, mother made no objection to the exit order prepared by G.G.'s counsel and signed by the court at the December 20, 2013 hearing.  Mother fails to preserve issue for appellate review and her attempt to generally object to Matthew's disposition is inadequate.

Mother asks this court to exercise its discretion to consider the issue because it raises a pure question of law and because of the magnitude of the interest involved.  In dependency cases, discretion to consider forfeited claims "must be exercised with special care[.]"  (*S.B., supra,* 32 Cal.4th at p. 1293.)  "[T]he appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue."  (*Ibid.*)  We decline to exercise such discretion here.  "The purpose of [the forfeiture] rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected.  [Citation.]"  (*Ibid.*)

In any event, for the reasons set forth below, the contention fails on the merits if it had been preserved for appeal.


**Standard of Review**


"We review an order setting visitation for abuse of discretion.  [Citation.]"  (*In re R.R.* (2010) 187 Cal.App.4th 1264, 1284; accord, *In re T.H.* (2010) 190 Cal.App.4th 1119, 1124 (*T.H.*).)  "'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'  [Citations.]"  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)  We will not disturb a dependency court's decision as an abuse of discretion unless the

court exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination. (*Id.* at p. 318.)

There is no abuse of discretion when the record contains substantial evidence supporting the findings and the decision. (*In re Kevin F.* (1989) 213 Cal.App.3d 178, 186; *In re Tyrone O.* (1989) 209 Cal.App.3d 145, 151.) "We must indulge all reasonable inferences to support the decision of the [dependency] court and will not disturb its findings when there is substantial evidence to support them." (*In re Michael D.* (1987) 188 Cal.App.3d 1392, 1395.)

## Visitation Order

When the dependency court terminates jurisdiction, it has authority to make "exit orders" addressing custody and visitation. (§ 362.4; *T.H., supra,* 190 Cal.App.4th at pp. 1122-1123.) Section 362.4 provides in pertinent part: "Any order issued pursuant to this section shall continue until modified or terminated by a subsequent order of the superior court. The order of the juvenile court shall be filed in [the family law proceeding] at the time the juvenile court terminates its jurisdiction over the minor, and shall become a part thereof." The court's exit orders "become part of any family court proceeding concerning the same child and will remain in effect until they are terminated or modified by the family court." (*T.H.*, *supra*, at p. 1123.)

When making exit orders determining custody and visitation, the court is required to make an informed decision concerning the best interests of the child. (*In re John W.* (1996) 41 Cal.App.4th 961, 973.) "The power to determine the right and extent of visitation by a noncustodial parent in a dependency case resides with the court and may not be delegated to nonjudicial officials or private parties. [Citation.] This rule of nondelegation applies to exit orders issued when dependency jurisdiction is terminated. [Citations.]" (*T.H.*, *supra,* 190 Cal.App.4th at p. 1123.) A visitation order may properly delegate responsibility for managing the details of visits, including their time, place and manner. (*In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1374.) "Only when the court

8

delegates the discretion to determine whether any visitation will occur does the court improperly delegate its authority . . . ." (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1009.)

Based on mother's history of substance abuse and its effect on the safety of her children, it is in Matthew's best interest to have G.G. approve of a monitor and allow for flexibility in the duration of each visit, while still requiring a minimum of two visits a week. The dependency court found the children are at risk of harm due to mother's ongoing pattern of alcohol abuse. Supervision of contact between Matthew and G.G. was unnecessary because Matthew has been with G.G. for six months without any reported incidents. Mother's reckless behavior with her children and her failure to follow up with previous substance abuse treatment programs warrants not only flexibility but also approval of a monitor by G.G. in the visitation order.

Mother relies on *T.H., supra,* 190 Cal.App.4th 1119, however, that case is distinguishable. The exit order in *T.H.* provided for supervised visitation, "but only upon the 'agreement of the parents.'" (*Id.* at p. 1123.) The court of appeal reversed the visitation order, noting that "[a]s the custodial parent of the children, mother could conceivably agree to only one visit a year or less without violating the letter of the court's order. This is more than simply a delegation of the authority to set the 'time, place and manner' of the visitation - it effectively delegates to mother the power to determine whether visitation will occur at all." (*Ibid.*) Here, the court has ordered visitation twice a week, unlike in *T.H., supra,* where the court left visitation up to the parents. Additionally, G.G. has arranged for Matthew to be cared for by the maternal grandmother, indicating he did not want to sever ties between mother and child. G.G. and mother have used her cousin's house as a place to exchange custody of Matthew before the dependency proceedings took place. There is no suggestion in the record that G.G. ever objected to, or will object in the future, to visitation by mother. G.G. has established a good relationship with the maternal relatives and "there is no reason to believe that he is not going to allow mother to have contact with her child." Furthermore,

9

the order did not permit G.G. to withhold his consent to visits in the manner of the *T.H.* order.

Mother's attempt to distinguish *In re A.C.* (2011) 197 Ca1.App.4th 796 from the instant matter falls short. In *A.C.,* the dependency court issued a visitation order calling for the parents to agree on a monitor to supervise visitation, or if they were unable to do so, the father would choose the monitor. (*Id*. at pp. 799-800.) The court of appeal ruled that the visitation order did not constitute an impermissible delegation of authority to determine whether visitation would occur. (*Ibid*.) Just like the case at hand, the child's father has the ultimate ability to choose the monitor, but he does not have impermissible authority to determine whether visits occur. (*Id*. at p. 800.) It is important to note that mother and G.G. had an amicable relationship when exchanging Matthew at her cousin's house and never had any reported concerns. And based on mother's history of substance abuse and the absence of substantial steps towards rehabilitation, the court's decision to have G.G. approve the monitor is appropriate and cannot be characterized as an abuse of discretion. Should G.G. ever refuse to cooperate with selecting a monitor under the court-ordered visitation, mother can seek enforcement or modification of the order in the family law court.

## DISPOSITION

The dependency court's family law exit order is affirmed.


KRIEGLER, J.


We concur:


TURNER, P. J.


MINK, J.[*]

---

[*] Retired judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.