Filed 12/6/23  In re A.P. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re A.P., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.P.,<br><br>Defendant and Appellant. | E079724<br><br>(Super.Ct.No. J292403)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Charles J. Umeda, Judge.  Affirmed with directions.

Alex Kreit, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Laura Baggett and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

1

Appellant and defendant A.P. (minor) appeals from the juvenile court's dispositional order committing him to a secure youth treatment facility (SYTF) known as Gateway to ARISE (ARISE). He argues that the court abused its discretion because its finding that a short-term residential therapeutic program (STRTP) was unsuitable was not supported by substantial evidence. Minor also argues that the court failed to set a maximum term of confinement as required by Welfare and Institutions Code section 875. (Unlabeled statutory citations are to this code.) We disagree and affirm with directions to correct a clerical error concerning the baseline commitment term.

## BACKGROUND

On February 16, 2022, while sitting in the back seat of a vehicle belonging to one of the victims, minor and his associate produced firearms and pointed them at the victims. Minor and his associate demanded the victims' personal property and forcibly grabbed the victims' belongings. They then exited the victim's vehicle, got into another vehicle, and fled the scene. The victims pursued them, and minor leaned out of the passenger window of the getaway vehicle and fired a round from a handgun, which struck the victims' vehicle. When minor was arrested approximately two weeks later, he was carrying a loaded "ghost" gun.

The San Bernardino County District Attorney filed a juvenile wardship petition under section 602, subdivision (a), alleging that minor, age 17, committed second degree robbery (Pen. Code, § 211, count 1), assault with a firearm (Pen. Code, § 245, subd. (a)(2), count 2), carrying a loaded, unregistered firearm (Pen. Code, § 25850, subd. (a), count 3), and shooting at an occupied motor vehicle (Pen. Code, § 246, count 4).

2

Pursuant to the parties' agreement, minor admitted counts 1 and 3, and the court dismissed counts 2 and 4.

The probation department filed several reports and memoranda with the court concerning its recommendation for minor's placement. The probation department's initial report recommended that minor be committed to ARISE because he would benefit from its programs, including aggression replacement training, anger management, life skills, gang diversion, career and financial guidance, and academic programs.

The probation department filed a supplemental memorandum following the juvenile court's order that the minor be screened by the placement unit for a less-restrictive placement than an SYTF. The memorandum indicated that minor did not appear suitable for a less-restrictive placement "on the grounds of no medical necessity and the youth had not had an opportunity to participate in community based programs since 2019." The report confirmed that minor was suitable for an SYTF commitment to ARISE.

At a pretrial hearing, the court indicated it was unsure what the probation department's position was regarding whether minor needed to be screened for a less restrictive placement. The court wanted to know whether it was probation's recommendation that minor did not have to be screened for a less restrictive placement. The court requested clarification from probation and continued the matter for one week.

The probation department then filed another report with the court. The report noted minor's case and prior criminal history and recognized that minor had not had the opportunity to participate in probation services or been granted any form of probation.

The probation department recommended that minor be declared a ward and placed on formal probation, be screened for Wraparound services, and tested for any mental health disorders. Probation hoped that, with therapy, probation services, and supervision minor would refrain from further criminal activity. The probation department further recommended that, because of the "seriousness and violent circumstances of the offenses," minor be released on GPS monitoring and serve an additional 14 days in custody to allow the Department of Behavioral Health to assess him for possible medication. The report also recommended that minor live in his mother's home, but the report also noted that minor's mother stated that he was not welcome in her home and that she had lost control over his behavior.

The court asked the probation department to clarify its placement recommendation again, observing that the probation report indicated minor's mother did not want him to return home, but the recommendation was to place him on probation there.

Probation filed another supplemental dispositional memorandum, indicating that the department had received a report prepared by psychological evaluator Dr. Marjorie Graham-Howard. The report stated that minor's brother, who lived in Arizona, was willing to have minor live with him and was committed to helping minor succeed in probation. The report also noted that minor said that he was in a rap group that had videos of their music on YouTube. A probation officer watched one of the videos and observed minor in it smoking what appeared to be marijuana and pointing a firearm at the screen. The lyrics in the song discussed evading the police, robbing people, and shooting people. The supplemental memorandum concluded that (1) minor "is more concerned

4

and adamant about being placed where he will have the least amount of supervision so he can resume various negative and criminal behaviors" and (2) minor "desperately needs supervision and various services in order to help him refrain from committing other offenses." The memorandum ultimately recommended that minor be declared a ward and "retained at a suitable placement or to live with his brother in Arizona." It further noted that should minor "violate his probation, commit any new law offenses or abscond from his brother's home or placement, the Probation Department [would] seek a commitment in Gateway to ARISE."

As a result of Dr. Graham-Howard's report, the probation department referred minor to the placement unit and then filed a further supplemental memorandum. It noted that minor "demonstrates no regard for public safety. [Minor] is gang affiliated, has been seen in a YouTube video in possession of a firearm, and using what appeared to be marijuana. [¶] It is noted [that minor] has spoken about refusing to take medication and dropping out of school. Per [minor's] interview, he does not feel he has done enough to deserve to go to placement or be placed with his brother. In juvenile hall, he fails to follow basic structure, is disrespectful towards staff and has poor peer interactions. [¶] Although he has a medical necessity which makes him eligible for Placement, he is not suitable based off of [minor's] history. [Minor] would likely benefit more from being placed in a secure facility as opposed to being placed in a Community Based Program."

At the disposition hearing on May 26, 2022, the court acknowledged the different placement recommendations that probation had made over the course of the case.

Because of the various recommendations, the court and the parties agreed that a contested disposition hearing was warranted.

At the contested disposition hearing, the court heard testimony from minor's expert witness Dr. Graham-Howard, two probation officers, and minor's adult brother. Dr. Graham-Howard testified that minor had a history of being disruptive in school and having learning disabilities. She noted that he scored in the "intellectually deficit range" when tested. His scores on another test indicated that he was in the early to mid-elementary school level in each assessed subject. She opined that minor would "probably bring attitude" with juvenile hall staff who are charged with keeping structure. Dr. Graham-Howard also testified that minor was assessed as a moderate risk for recidivism later in adolescence. She recommended an out-of-home placement with significant security because she believed that his biggest risk was absconding and ending up with negative peers. She also clarified that it was her understanding that minor's intellectual disability diagnosis would exclude him from ARISE, but if her understanding was incorrect, then he would be an appropriate candidate and could be properly rehabilitated there.

Probation officer Jhora Williams testified that minor's rehabilitation could be accomplished better at ARISE than at another placement or through probation. She also testified that placement at an unsecured, community-based rehabilitation facility would not be appropriate because minor was a flight risk and because of his issues in school and at juvenile hall, as well as the circumstances of his offense.

6

Probation officer Todd Holmes testified that ARISE is a "lockdown facility" that can hold juveniles long term. He explained that the numerous programs at ARISE are designed to rehabilitate the participants and reduce future criminality. Holmes testified that ARISE had an academic program that could be tailored to each youth, and if someone needed a program that was not available at ARISE, then ARISE would reach out to programs at other facilities to provide those services. He also testified that learning disabilities or disorders would not disqualify an individual from ARISE. Holmes opined that ARISE was the most appropriate placement for minor to receive the services he needs and that a short-term, less restrictive placement was not in minor's best interest. He expressed concern that minor had made a comment to staff that if he was sentenced to ARISE, he would "'commit a bigger crime that [would] have him on the news, and . . . the D.A. [would] know he made a mistake.'" Holmes testified that when advised that minor should not say such things, minor stated "he wasn't joking and that he was okay with going to prison."

Minor's brother testified that he lived in a small town in Arizona, and there was "not much out [t]here." He testified that he works from home and that when minor was previously placed with him, minor "was headed in a better direction" and "didn't have access to things that he would have had back in California."

Before announcing its ruling, the court reviewed the five criteria governing SYTF commitments under section 875, subdivision (a)(3). First, the court considered the severity of minor's offenses and described the details of counts 1 and 3 of the petition. The court stated that robbing a victim at gunpoint "is a highly serious crime. The

7

severity [of which] is greatly increased when the youth not only points the gun at the victim, but, also, fires the gun at the victims while they are following him and [his associate]."

Next, the court described minor's previous delinquent history, acknowledging that minor had previously been arrested for robbery but the allegation was rejected by the district attorney. Thus, minor did not have a history of prior attempts at rehabilitation.

The court then considered whether the programming, treatment, and education offered and provided at ARISE were appropriate to meet minor's treatment and security needs. The court found that the programming at ARISE was appropriate because it provides gang intervention, life skills, anger management, aggression replacement training, individual therapy, high school and community college classes, and vocational training.

The court also considered whether the goals of rehabilitation and community safety could be met by assigning minor to an alternative, less restrictive disposition. The court considered placement of minor with his older brother in Arizona but had concerns about the availability of resources there. The court also considered an STRTP but had concerns about minor's poor behavior in juvenile hall, which included displaying a poor attitude toward staff and refusal to obey staff orders. Minor also threatened that he would commit a "bigger" crime if placed at ARISE. The court believed that minor posed a potential danger to other residents at an STRTP.

Finally, the court considered whether minor's age, developmental maturity, mental and emotional health, sexual orientation, gender identity or expression, and any

8

disabilities or special needs would affect the safety or suitability of committing minor to a term of confinement at ARISE. The court considered minor's low level of intellectual functioning but found that ARISE could provide minor with remedial assistance for his intellectual disability. Minor did not have any serious mental disorders, and there were no issues relating to sexual orientation or gender identity or expression that would make placement at ARISE unsuitable.

The court ultimately found that alternative, less restrictive dispositions were unsuitable and that ARISE was an appropriate commitment. The court then determined that the total custody time was three years eight months and set a baseline term of two years. The following day, the court clerk prepared a juvenile detention disposition report (disposition report) stating a confinement term of 32 months.

## DISCUSSION

### I. *The Court Properly Committed Minor to an SYTF*

Minor argues that the court abused its discretion by committing him to ARISE because the record does not contain sufficient evidence to support a finding that no less restrictive, alternative disposition would have been suitable. We disagree.

### A. *Standard of Review*

"The appellate court reviews a commitment decision for abuse of discretion, indulging all reasonable inferences to support the juvenile court's decision." (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396.) "'A trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence.'" (*In re Khalid B.* (2015) 233 Cal.App.4th 1285, 1288.) "There is no abuse of discretion where

9

the commitment is supported by substantial evidence on the record." (*In re Kevin F.* (1989) 213 Cal.App.3d 178, 186.)

B. *The Evidence Supported the Court's Commitment of Minor to ARISE*

Section 875, subdivision (a)(3), authorizes the court to order a youth who is at least 14 years old committed to an SYTF if the ward meets certain criteria and "[t]he court has made a finding on the record that a less restrictive, alternative disposition for the ward is unsuitable." The court must base its determination "on all of the following criteria: [¶] (A) The severity of the offense or offenses for which the ward has been most recently adjudicated, including the ward's role in the offense, the ward's behavior, and harm done to victims[; ¶] (B) The ward's previous delinquent history, including the adequacy and success of previous attempts by the juvenile court to rehabilitate the ward[; ¶] (C) Whether the programming, treatment, and education offered and provided in a secure youth treatment facility is appropriate to meet the treatment and security needs of the ward[; ¶] (D) Whether the goals of rehabilitation and community safety can be met by assigning the ward to an alternative, less restrictive disposition that is available to the court[; ¶] (E) The ward's age, developmental maturity, mental and emotional health, sexual orientation, gender identity and expression, and any disabilities or special needs affecting the safety or suitability of committing the ward to a term of confinement in a secure youth treatment facility." (§ 875, subd. (a)(3)(A)-(E).)

Section 727, subdivision (a)(4)(E), authorizes placement of a minor in an STRTP. That provision notes that an STRTP is defined in section 11400, subdivision (ad), which describes an STRTP as "a nondetention, licensed community care facility."

As to the fourth factor, minor argues that the record does not contain sufficient evidence that the goals of rehabilitation and community safety could not be met by placement in a less restrictive setting, namely, an STRTP. We disagree. As the court noted, minor's offenses were "serious and violent"—he pointed a gun at the victims' faces while robbing them, and he then fired the gun at them when they pursued him. While in juvenile hall awaiting disposition, minor exhibited poor behavior and attitude, and he refused to obey staff or follow staff instructions. He also threatened to commit an even more serious crime when released, adding that "he wasn't joking and that he was okay with going to prison." Williams testified that minor "would be a flight risk," and minor's own retained expert testified that there was a significant risk that minor would try to abscond from placement. Thus, the record supports a determination that a nonsecure facility like an STRTP would not adequately serve the goals of rehabilitation and community safety—minor would probably try to run away, thereby endangering the public and losing the benefits of the treatment programs available at his placement. For all of these reasons, the record amply supports the court's findings that minor "cannot behave in [a] non-disruptive manner that is necessary for [placement in an] STRTP setting" and that minor "poses a potential danger to other residen[ts] at [an] STRTP."

Minor's arguments to the contrary are not persuasive. First, minor argues that the record does not contain sufficient evidence of the inadequacy of an STRTP, "because the record does not contain any evidence about the requirements for placement or programming available at an STRTP." The argument lacks merit. The record contains evidence that a placement like an STRTP is an unsecured facility, as provided by statute

11

(§ 11400, subd. (ad)).  Given the evidence of the seriousness of minor's offenses, his conduct in juvenile hall, and his risk of flight, the record contains more than sufficient evidence to support the trial court's finding that placement in an STRTP would be unsuitable because it would not adequately serve the goals of rehabilitation and community safety.

Second, minor argues that both experts "recommended the court consider a less restrictive placement."  The argument fails because under the substantial evidence standard of review, the trial court's findings must be affirmed if the record contains sufficient evidence to support them, even if the record also contains conflicting evidence. (*In re K.H.* (2022) 84 Cal.App.5th 566, 601.)  Thus, even if both experts had testified unequivocally that an SYTF commitment would not be an appropriate disposition, the trial court would not be bound by those opinions if the record also contained sufficient evidence to support a contrary finding.  Moreover, Dr. Graham-Howard believed incorrectly that minor's intellectual disability made him ineligible for commitment to ARISE, and she testified that if it did not, then "he would be an appropriate candidate" for the program.

Third, minor quotes a passage from one of the probation department's reports and argues that "the probation department's stated reasons for not seeking a placement are incompatible with section 875."  The argument fails because, regardless of the statements in the quoted passage of the report, the record contains substantial evidence supporting the trial court's determination that no less restrictive, alternative placement would be appropriate.  As already discussed, Williams's testimony explained why placement in an

unsecured facility like an STRTP would be inadequate, and minor's own expert agreed that minor "would be an appropriate candidate" for an SYTF if he is not ineligible, which he is not.

Fourth, minor argues that the circumstances of his case "demonstrate that his potential suitability for an alternative placement was at least plausible." Assuming for the sake of argument that minor's assertion is true, his argument still fails to show any error under the applicable standard of review. We review the commitment decision for abuse of discretion (*In re Angela M.*, *supra*, 111 Cal.App.4th at p. 1396), and we review the trial court's factual findings for substantial evidence (*In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1154). Even if it was plausible that minor was potentially suitable for a less restrictive placement, it does not follow that the trial court's commitment decision was irrational or arbitrary (*In re Caden C.* (2021) 11 Cal.5th 614, 640 [defining the abuse of discretion standard]) or that the record does not contain substantial evidence to support it.

Minor also argues that there was insufficient evidence that minor's need for remedial assistance with his intellectual disability could be met at ARISE. The argument lacks merit. Williams testified that minor's intellectual disability would not affect his ability to function or benefit from the programs at ARISE. Holmes testified that ARISE had an academic program that could be tailored to each youth, and it could reach out to other facilities to provide a needed program that was unavailable at ARISE. Moreover, a psychological evaluation report by Dr. Shannon Johnson explained that test results concerning minor's intelligence level should "not [be] considered to be an accurate

13

reflection of [minor's] intellectual functioning." And again, Dr. Graham-Howard agreed that if minor's intellectual disability diagnosis did not exclude him from ARISE, which it does not, then he would be an appropriate candidate and could be properly rehabilitated there.

Finally minor cites *In re Carlos J.* (2018) 22 Cal.App.5th 1 in support of his contention that the trial court abused its discretion by committing him to ARISE, but the case is inapposite. In *In re Carlos J.*, the record contained no evidence concerning the programs available at the facility to which the ward was committed. (*Id.* at p. 4.) Here, the record does contain such evidence—Holmes testified in detail about the programs offered at ARISE.

For all of these reasons, minor has not shown that the court's determination that a less restrictive, alternative disposition was unsuitable was an abuse of discretion or was not supported by substantial evidence.

II. *The Court Properly Set a Maximum Term of Confinement*

Minor argues that the court failed to set a maximum term of confinement based upon the facts and circumstances of the case. He asserts that the court set a baseline term of two years and also stated that the "total custody time" was three years eight months, the court never "stated that it had decided to set three years and 8 months as the maximum term of confinement, based upon the facts and circumstances of the case." Alternatively, minor points out that the disposition report erroneously lists a 32-month commitment instead of a two-year baseline commitment with a maximum term of

14

confinement of three years eight months. We agree that the disposition report contains a clerical error, but we otherwise reject minor's argument.

A juvenile court has discretion to impose a period of confinement that is less than the maximum allowed under the law. (See *In re Julian R.* (2009) 47 Cal.4th 487, 491-492 (*Julian R.*).) Section 875, subdivision (c)(1), requires the court to "set a maximum term of confinement for the ward based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the court and as deemed appropriate to achieve rehabilitation." Section 875, subdivision (c)(1)(B), provides that, "[t]he maximum term of confinement shall not exceed the middle term of imprisonment that can be imposed upon an adult convicted of the same offense or offenses."

This court must presume that the juvenile court understood that it could impose a lower maximum term of confinement if such an order was justified under the circumstances. (See *Julian R.*, *supra*, 47 Cal.4th at pp. 498-499.) The court here set the maximum term of confinement at three years eight months. Although the court used the words "total custody time," we do not believe that the court's oral pronouncement can reasonably be interpreted as referring to something other than the maximum term of confinement. Nothing in the record rebuts the presumption that the court understood its discretionary authority, and the facts and circumstances of minor's behavior amply support the court's decision in setting the maximum term.

Finally, minor argues that because the disposition report states a confinement term of 32 months, we should remand for the juvenile court to correct the report to reflect a

15

baseline term of two years and a maximum term of confinement.  Respondent agrees that the clerical error should be corrected.

Clerical error occurs when a document fails to reflect the court's intended ruling. (*People v. Clark* (2021) 67 Cal.App.5th 248, 256.)  Clerical errors may be corrected at any time.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)  Accordingly, we will direct the superior court to correct the disposition report to reflect the disposition of a baseline term of two years and a maximum confinement term of three years eight months.

## DISPOSITION

The superior court is directed to correct the juvenile detention disposition report to reflect the disposition of a baseline term of two years and a maximum term of confinement of three years eight months.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


MENETREZ
                                                                                          J.


We concur:


RAMIREZ
          P. J.


MILLER
          J.


16