Filed 7/6/16  In re G.L. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re G.L., a Person Coming Under the Juvenile Court Law. | B268989 (Los Angeles County Super. Ct. No. CK73996) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. F.M., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Annabelle Cortez, Judge.  Affirmed.

Maureen L. Keaney, under appointment by the Court of Appeal, for Appellant and Defendant.

Office of the County Counsel, Mary C. Wickham, County Counsel, R. Keither Davis, Acting Assistant County Counsel, Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

**INTRODUCTION**

F.M. (mother) appeals from the juvenile court's November 18, 2015, order of monitored visitation between herself and her six-year-old child, G.L.  Mother contends that the juvenile court erred by effectively and improperly delegating its authority to deny mother's visitation of G.L. or to revert it from unmonitored visits to monitored visits; ordering monitored visitation; and finding the Los Angeles County Department of Children and Family Services (Department) provided her with reasonable services because the Department had modified mother's visitation schedule without seeking an order from the juvenile court.  We affirm the order.

**FACTUAL AND PROCEDURAL BACKGROUND**

On November 19, 2014, the Department received a referral alleging that G.L's father**,** who is not a party to this appeal, had completed a five-year prison term for criminal domestic violence against mother, and shortly after father was released he beat mother, causing G.L. to have a nervous breakdown.  Maternal aunt, P.H., said G.L. was afraid to go home because she witnessed father hit and threaten to kill mother, and G.L. witnessed other fights between father and mother since father's return from prison.

G.L. said father and mother began arguing and hitting each other in the car while she was in the back seat, and while father repeatedly pounded on mother's head, he said, "I'll kill both of you."  G.L. stated that she was "really scared" of father because of that threat, and she did not want to go home because mother kept taking her along when mother would go to see father, who did not live with them. G.L. said she witnessed mother and father fighting about five times after his release from prison.

Mother admitted that she and father argued; denied she and father physically fought after he had been released from prison; admitted that she used "[m]eth" three or four times per week; and claimed father no longer used drugs.  Father acknowledged

arguing with mother but denied hitting anyone. Father had an extensive criminal history, including felony convictions for making criminal threats with intent to terrorize, inflicting corporal injury on a spouse or cohabitant, kidnapping, and violating parole; two felony convictions for grand theft; four misdemeanor convictions for being under the influence of a controlled substance; and one misdemeanor conviction for violating a court order to prevent domestic violence.

The Department filed a petition pursuant to section 300, subdivisions (a) and (b), on behalf of six-year-old G.L., alleging G.L. was at risk of harm due to mother's drug use and domestic violence with father. The juvenile court detained G.L. with P.H., granted the parents monitored visits, specified that mother and father were not to visit G.L. together, and ordered the Department to refer the parents to drug testing. In January 2015, the Department filed a first amended section 300 petition adding an additional allegation regarding father's criminal history.

On January 30, 2015, the Department filed a jurisdiction/disposition report stating mother admitted she remained in contact with father and does not "understand why anyone would be opposed to [my] doing so"; and G.L. used to look at father as her hero, but now wanted "nothing to do with him." G.L. said she would like to reunify with mother if mother is willing and able to provide her with adequate care and supervision, but "that under no circumstances will she unify with mother if she is having contact of any kind with father." P.H. stated that mother was willing to accept support from her four sisters.

P.H. said she suspected mother began using drugs eight years ago, and the problem worsened when father entered her life. Mother acknowledged she needed help for her drug addiction. The Department encouraged mother to quickly enroll in drug counseling with random testing, individual counseling with a licensed therapist, and parenting classes. Mother stated that she was willing to participate in a drug rehabilitation program and parenting classes, and would be enrolling in individual, group, and drug counseling.

3

The Department filed an April 13, 2015, addendum report stating mother was having consistent monitored visits with G.L., and both mother and G.L. requested overnight visits. Mother and father continued to have contact with each other, and as of April 13, 2015, had "recent[ly]" engaged in a fight which required police involvement. In January 2015, father was arrested for possession of drug paraphernalia, a parole violation; was arrested in March 6, 2015, for a reason unknown to the Department; missed several drug tests; and twice tested positive for cannabinoids.

At the April 13, 2015, adjudication hearing, the juvenile court sustained the first amended section 300 petition as amended;[1] declared G.L. a dependent; removed her from

---

[1] The petition was sustained as follows:

a-1/b-1: "[Mother and father] have a history of engaging in violent altercations, in the child's presence. On 11/18/2014, the father repeatedly struck the mother's head with the father's fists. The father grabbed the mother's arms. The mother sustained scratches and red marks to the mother's face. On prior occasions in November of 2014, the father struck the mother, in the presence of the child. On 11/18/2014, the mother struck the father. On 11/18/2014, the father threatened to kill the mother and the child. The child is afraid of the father, due to the father's violent conduct against the mother. The mother failed to protect the child. The mother allowed the father to have unlimited access to the child. The child is a prior [d]ependent of the Juvenile Court, due to the father's violent conduct against the mother. Such violent conduct on the part of the father against the mother and the mother's failure to protect the child endanger the child's physical health and safety and place the child at risk of physical harm, damage, danger and failure to protect."

b-2: "[Mother] has a history of illicit drug use and is a current user of methamphetamine[], which renders the mother incapable of providing regular care of the child. On prior occasions in 2014, the mother was under the influence of methamphetamine[], while the child was in the mother's care and supervision. Such illicit drug use on the part of the mother endangers the child's physical health and safety and places the child at risk of physical harm and damage."

b-4: "[Father] has an extensive criminal history that includes but is not limited to felony convictions for Threatening Crime With Intent to Terrorize, Inflict Corporal Injury Spouse/Cohabitant, Kidnapping, and Violation of Parole. The father has four misdemeanor convictions for being Under the Influence of a Controlled Substance. [Mother] knew or reasonably should have known of the father's criminal activity. The mother knew or reasonably should have known of the father's criminal convictions. The mother failed to protect the child. The mother allowed the father to have unlimited access to the child. Such criminal conduct by the father and the mother's failure to

4

parental custody; ordered reunification services for mother and father; granted mother monitored visits with the Department having discretion to liberalize to unmonitored visits; and ordered mother to participate in a drug treatment program with aftercare, weekly random drug testing, a 12-step program with sponsor, parenting classes, and individual counseling with a licensed therapist. These services were listed in mother's court ordered case plan.

According to the Department's October 9, 2015, status review report, the Department liberalized mother's visits to unmonitored with one weekly monitored overnight visit in P.H.'s home because mother had completed an inpatient drug treatment program. The Department reported that mother completed a parenting program; and was participating in a substance abuse recovery program, attending a domestic violence program, and receiving weekly mental health services.

Mother said her current home had "triggers" regarding her drug use, so she was planning to find another home for herself and G.L. Despite liberalizing mother's visits with P.H., the Department remained concerned that mother's residence contained use of drug "triggers."

Mother and father denied being in contact with one another. Father was arrested and convicted in April 2015 for violating parole by possessing a knife.

The Department reported that G.L. often asked when she could live with mother again, and when she and mother could have visitation without P.H. being present. G.L. "continuously and unwaveringly" said she did not want to see, visit, or speak with father.

In its October 9, 2015, last information for the court report, the Department reported mother claimed she was planning to find another home for herself and G.L. because of the drug use "triggers" in mother's home. Mother's visits had reverted to monitored visits because G.L. said an overnight visit had occurred at mother's home.

At the October 9, 2015, six-month review hearing, mother's counsel requested a contested hearing, which the juvenile court set for November 18, 2015. When mother's

protect the child from the father endanger the child's physical health and safety and place the child at risk of physical harm, damage, danger, and failure to protect."

5

counsel requested unmonitored visitation, G.L.'s counsel stated that unmonitored visits did not appear to pose a risk to the child. The Department's counsel asked for continued monitored visits with discretion to liberalize. The juvenile court ordered unmonitored visits for mother, "subject to [mother] continuing to test negative, continuing in her after care, and continuing to participate in all the programs that have—that she has not yet completed. [¶] [T]hat would be the after care, domestic violence, and specifically the testing to demonstrate sobriety." The Department's counsel objected to unmonitored visitation and requested a stay, which the court denied, stating, "If there are any safety concerns with respect to the Court's order, the Department [is] to walk it on." The juvenile court ordered the Department to "work out a written visitation schedule for mother and minor."

According to the Department's November 18, 2015, last information for the court report, on October 20, 2015, the Department and mother agreed to a visitation schedule: mother would visit G.L. from 5:30 p.m. to 7:00 p.m. on Mondays at a local yogurt shop, Tuesdays, Wednesdays, Fridays, and weekends at P.H.'s home, and Thursdays at a local McDonalds restaurant. On October 28, 2015, mother went to the Department's offices and stated that on October 24, 2015, she went to the home of paternal aunt, C.L., where father was also residing, to deliver a phone to C.L., and mother ultimately spent the night with father. Mother admitted that she spent the night with father despite knowing father was not in compliance with court orders and was expecting a child "with his neighbor."

On October 28, 2015, mother told the Department that as a result of spending the night with father, P.H. stopped allowing her to visit G.L. Mother said she believed P.H. was "punishing" her because on October 25, 2015, P.H. did not loan her $21 to go with G.L., P.H., and P.H.'s family to Knotts Berry Farm; P.H. did not allow her to see G.L. on October 26, 2015; and mother was able to see G.L. on October 27, 2015, only by going to G.L.'s school without first informing P.H. The Department told mother her decision to spend the night with father would negatively impact her case because of their history of drug use and domestic violence, father not making any efforts to contact the Department, and father having failed to attend juvenile court proceedings. Mother apologized and said

6

she understood "that such choices and risky behavior could not only result in not reunifying with G.L. but it could cost [her] her sobriety."

When the Department asked mother why she disclosed this information to it, mother replied, "Because I got caught." Mother explained that P.H. had gone to C.L.'s home, saw mother's car there, and took pictures. Mother said that what had happened was a "one time incident," which she immediately discussed with her 12-step program sponsor, causing her to realize that it was "the equivalent of a 'relapse.'"

P.H. said mother did not "appear to be taking this case seriously"; P.H. did not believe this was the only occasion mother had been with father since mother had completed her inpatient program; she "knew something was going on [between] mother and father" because mother continually provided updates as to father's whereabouts and activities, and had given her car to him; and there was "no doubt in her mind" that mother and father were "back" together because once mother found out father's pregnant girlfriend had left father, mother stated she wanted to have another child with him and was trying to get pregnant by him.

The Department reported that on October 28, 2015, P.H. said she had no intentions of keeping mother from visiting G.L.; took her actions regarding mother in order to protect G.L.; told mother to contact the Department and disclose "all that has been going [on"] and P.H. would thereafter contact the Department; allowed mother a two-hour monitored visit with G.L. on October 28, 2015; and would continue to monitor visits until the juvenile court or the Department said "otherwise."

The Department reported that it questioned mother's sobriety; said it was concerned that mother was participating in court-ordered services only to reunify with G.L. and that she would allow father access to G.L. once the case was closed; and recommended that mother's visitation return to monitored visits.

At the November 18, 2015, contested six-month review hearing, mother's counsel stated that mother wanted overnight and unmonitored visits with G.L. The Department's counsel asked the juvenile court to revert mother's visits with G.L. to monitored visits because "the mother appears to be resuming her relationship back with the father. There

7

[are] concerns about the mother relapsing and the mother only being forthcoming with information because she was caught by her family."

G.L.'s counsel joined with the Department, stating, "At the last court date on [October 9, 2015], my position . . . was that I didn't see a risk to [awarding mother] unmonitored [visits] because she had completed her programs and [G.L. was] enjoying her visits with the mother. [¶] But . . . today[] . . . I'm very concerned that the mother has decided to resume her relationship with the father, especially because of [G.L.'s] position against visits with the father and the fact that the father could be a trigger to the mother's relapse."

The juvenile court found substantial progress had been made toward alleviating or mitigating the causes necessitating placement; the Department had "complied with the case plan in making reasonable efforts to return [G.L.] to a safe home," but returning G.L. to mother's custody would create a substantial risk of detriment to the child; and "there is a substantial probability that [G.L.] may be returned home to [mother] by the next review period."

The juvenile court acknowledged mother was granted unmonitored visitation at the October 9, 2015, hearing, but said that at that time mother denied she was having any contact or involvement with father. Because of mother's contact with father, the juvenile court ordered mother's visits to revert to monitored visits.

The juvenile court stated, "There's concerns in the reports about mom's sobriety being recent and the need to maintain the sobriety. She's testing clean. However, there's information about [mother] having . . . contact with [father], who is in a different place with respect to his progress with the case plan. [¶] [T]here's a question in the Court's mind about [mother] potentially resuming the relationship with the father[—]the same father who is part of the sustained petition that included domestic violence, including father threatening to kill mother and child. [¶] And mom's in the middle of participating in her domestic violence class. So, at the very least, it raises the question concerning substantive progress with . . . her domestic violence. And . . . what we have in the record with respect to father is that he was arrested [in April and] when he was arrested . . . there

8

was an issue about father and crack. [¶] I can't tell the mom who to have a relationship with. However, in terms of the progress that mom has made and reunifying with [G.L.] . . . the Court will have to look at the totality of the facts and whether the Court's able to return G.L. safely to [mother's] care. [¶] And a factor will certainly be if [mother] is resuming her relationship with [father], given . . . the sustained petition [involving] significant domestic violence. [¶] I'm glad—it appears to the Court that [P.H. is] being very protective of [G.L.], and that's an appropriate placement at this time." The juvenile court granted the Department discretion to liberalize mother's visits to unmonitored and overnight if mother tested clean and was making progress in domestic violence class.

Mother's counsel stated there was no evidence mother ever took G.L. "around father," and asked whether the juvenile court was asking mother not to have any contact with father in order to be awarded unmonitored visits with G.L. The juvenile court responded, "I'm not making any order about what [mother] needs to do with respect to [father]. [Mother] is an adult. She knows what the issues are. She knows what the concerns are that the Department has with respect to [father]. [¶] [Father] was ordered to participate in a full drug program, testing, parenting, individual counseling to address case issues. The sustained petition involved domestic violence. [¶] And for [father] it involved his extensive criminal history. And there's also concerns about father's sobriety. [¶] . . . [¶] [I] can't tell [mother] what relationship to have with [father]. But I can only assess the risk to [G.L.] that follows [mother's] contact with [father], given that [mother is] still in [domestic violence] classes, given [father's] not in the same place where [mother is] with [her] progress. [¶] . . . [¶] So, realistically, [mother] need[s] to do [her] own self-assessment of what [she] need[s] to do and [her] priorities in terms of whether [she] focus[es] on [father] or whether [she] focus[es] on [G.L.]— [¶] . . .[¶] — or whether there's a way that [mother can] focus on both without putting [G.L.] at risk. [¶] . . . [¶] I remonitored visits because I don't trust at this point that mom can have unmonitored visits without at some point exposing [G.L.] to [father], given she's having contact and it appeared to be not in the open until it was brought up . . . by her

9

sister. [¶] So that's my concern. I don't want [G.L.] to end up having contact with [father] because I'm allowing mom to have unmonitored contact with [G.L.] and she is placing herself in a position which she—may put her in this position of relapsing, given . . . the information about [father] in the record." Mother filed a timely notice of appeal.

## DISCUSSION

### A.    Delegation

Mother contends that in its October 9, 2015, order, the juvenile court effectively and improperly delegated its authority to deny mother's visitation of G.L. or to revert it from unmonitored visits to monitored visits. We disagree, as there was no delegation of that order.

### 1.    Standard of Review

A juvenile court's visitation orders are reviewed for an abuse of discretion. (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1124; *In re R.R.* (2010) 187 Cal.App.4th 1264, 1284.) "'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' [Citations.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) We will not disturb a juvenile court's decision as an abuse of discretion unless the juvenile court exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination. (*Id.* at p. 318.)

### 2.    Analysis

On October 9, 2015, the juvenile court ordered unmonitored visits for mother; said, "If there are any safety concerns with respect to the Court's order, the Department [is] to walk it on"; and ordered the Department to provide a visitation schedule for

mother and G.L. Shortly thereafter, the Department and mother agreed to a visitation schedule that provided mother would visit G.L. every day of the week from 5:30 p.m. to 7:00 p.m. For several days, commencing on approximately October 26, 2015, P.H. refused to allow mother to visit G.L., and then only allowed mother to have a monitored visit.

Mother argues that for about 21 days "the [Department] allowed [P.H.] to deny and then set strict rules not encompassed by the court's order." Although for about 21 days the Department did not raise the issue of P.H.'s modification of mother's visitation with the juvenile court, there is evidence in the record that P.H. modified mother's visitation only on approximately three days.

The record discloses that as a result of mother spending the night with father, P.H. did not allow mother to visit with G.L. for two days (October 26 and 27, 2015),[2] and P.H. caused mother's visit on a third day (October 28, 2015) to be monitored, as opposed to an unmonitored. On October 28, 2015, the Department learned that P.H. had not allowed mother to visit on the two occasions, and caused mother's visit on a third occasion to be monitored, and there is no evidence in the record that the Department "walked [the matter] on" to the juvenile court.

On October 28, 2015, P.H. said she had no intentions of keeping mother from visiting G.L. There is no evidence in the record that P.H. prevented mother from visiting G.L. from October 29, 2015 through November 18, 2015, the date of the contested six-month review hearing. P.H. told the Department that she would continue to monitor mother's visits until the juvenile court or the Department determined the visits were to be unmonitored. There is no evidence in the record however whether mother's visits with G.L. from October 29, 2015 through November 18, 2015, if any, were monitored. The issue that P.H. had not allowed mother to visit on the two occasions, and caused mother's

---

**2** Mother also said she was unable to visit with P.H. on October 25, 2015, because she believed P.H. "punish[ed]" her by not loaning her $21 to go with G.L., P.H., and P.H.'s family to Knotts Berry Farm. ~(CT 245)~ Mother does not cite to any authority that P.H. had obligation to loan her the money.

visit on a third occasion to be monitored came to the attention of the juvenile court during the November 18, 2015, contested six-month review hearing.

The power to determine the right and extent of visitation by a noncustodial parent in a dependency case resides with the juvenile court and may not be delegated to nonjudicial officials or private parties. (*In re Donnovan J.* (1997) 58 Cal.App.4th 1474, 1476-1477; *In re Chantal S.* (1996) 13 Cal.4th 196, 213-214.) When visitation is ordered, the juvenile court may delegate responsibility for managing details such as the time, place and manner of visits. (*In re Chantal S.*, *supra*, 13 Cal.4th at p. 213; *In re T.H.*, *supra*, 190 Cal.App.4th at p. 1123.) "Only when the court delegates the discretion to determine whether any visitation will occur does the court improperly delegate its authority. . .." (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1008; accord, *In re S.H.* (2003) 111 Cal.App.4th 310, 316-318.)

The juvenile court did not improperly delegate its authority to determine the right and extent of mother's visitation with G.L. On October 9, 2015, the court ordered visitation to occur and gave no discretion to either the Department or P.H. to decide that issue. Similarly, the court gave no discretion to either the Department or P.H. to decide whether the visits were to be monitored or unmonitored; the juvenile court ordered unmonitored visits for mother.

P.H. nevertheless denied mother visitation for two days and caused mother to experience one monitored visit, and the Department did not "walk it on" to the juvenile court after having learned about P.H.'s actions. Though the juvenile court later agreed with P.H.'s actions, this does not mean that the court improperly delegated its authority regarding mother's visitation rights. The court simply ruled on propriety of P.H.'s actions based on the facts presented to the juvenile court for the first time. Of course, nothing prevented mother from immediately raising the issue of P.H.'s actions with the juvenile court if she believed that either P.H. or the Department were violating her visitation rights, but mother did not do so.

Even if the juvenile court effectively improperly delegated its authority regarding mother's visitation rights, the error was harmless under either *Chapman v. California*

(1967) 386 U.S. 18, 24 [harmless beyond a reasonable doubt standard] or *People v. Watson* (1956) 46 Cal.2d 818, 836 [reasonable probability of a more favorable result standard]. The juvenile court would have approved P.H.'s actions even if the facts were brought to it on October 26, 2015. In reverting mother's visitation of G.L. to monitored, the juvenile court was in agreement with P.H.'s actions regarding mother's visitation following mother spending the night with father, saying it was "glad" P.H. was "being very protective of [G.L.]"

### B. Propriety of Order for Monitored Visitation

Mother contends that the November 18, 2015, order for monitored visitation must be reversed because there was no prior order prohibiting her from seeing father, and the juvenile court's finding that she might expose G.L. to father during an unmonitored visit was based on speculation. The juvenile court did not err.

#### 1. Standard of Review

As noted above, we review juvenile court's visitation orders for abuse of discretion. (*In re T.H., supra,* 190 Cal.App.4th at p. 1124; *In re R.R., supra,* 187 Cal.App.4th at p. 1284.) There is no abuse of discretion when the record contains substantial evidence supporting the findings and the decision. (*In re Kevin F.* (1989) 213 Cal.App.3d 178, 186; *In re Tyrone O.* (1989) 209 Cal.App.3d 145, 151.) "We must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them." (*In re Michael D.* (1987) 188 Cal.App.3d 1392, 1395.)

#### 2. Analysis

When mother was given unmonitored visitation on October 9, 2015, it appeared her relationship with father was not an issue because at that time she claimed she was no longer in contact with father. On November 18, 2015, however, when the juvenile court learned that mother had resumed her relationship with father, it reasonably concluded this

13

posed a safety risk to G.L. because father had unresolved problems with violent conduct and substance abuse.

There is evidence through the sustained first-amended petition that father has "an extensive criminal history" that includes felony convictions for threatening crime with intent to terrorize, inflicting corporal injury on a spouse/cohabitant, kidnapping, and violating parole, and four misdemeanor convictions for being under the influence of a controlled substance. In January 2015, father was arrested for possession of drug paraphernalia. From mid-December 2014 through the end of March 2015, he also missed several drug tests and tested positive for cannabinoids on two occasions. In addition, father has a history of engaging in violent altercations with mother in G.L.'s presence, and had threatened to kill mother and G.L.

Mother admitted she needed assistance to resolve her drug addiction, and at the time of the juvenile court's November 18, 2015, order for monitored visitation, she had only recently attained sobriety. Mother acknowledged that her decision to spend the night with father could jeopardize her sobriety and impede her efforts in reunifying with G.L.; acknowledged that her decision to spend the night with father was tantamount to a drug "relapse"; and told the Department that she spent the night with father, "Because I got caught." In addition, mother was in denial that she and father engaged in any physical altercations after father had been released from prison.

Contrary to mother's contention, the juvenile court's concern that mother would expose G.L. to father was not speculative. Mother repeatedly exposed G.L. to father despite the risk he posed to her. At the commencement of the case, G.L. said mother "kept taking her along" to see father and she had witnessed approximately five fights between mother and father since father release from prison a few days before the commencement of the case. "A parent's past conduct is a good predictor of future behavior." (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.) "The court may consider past events in deciding whether a child presently needs the court's protection. [Citations.]" (*In re N.M.* (2011) 197 Cal.App.4th 159, 165-166.) The juvenile court does not need to

wait until a child is seriously injured to take steps necessary to protect the child. (*Id.* at p. 165.)

There is substantial evidence that mother's contact with father posed a risk to G.L. The juvenile court did not err by ordering monitored visits for mother.

## C. Reasonable Services

Mother contends that the Department did not provide her with reasonable reunification services because it modified her visitation schedule without seeking an order from the juvenile court. We disagree.

### 1. *Standard of Review*

We review the juvenile court's order with regard to the sufficiency of reunification services under the substantial evidence standard. (*In re P.A.* (2006) 144 Cal.App.4th 1339, 1344; *In re Albert T.* (2006) 144 Cal.App.4th 207, 216; *In re Jasmine C.* (1999) 70 Cal.App.4th 71, 75; *Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 762.)[3] We resolve all conflicts in support of the juvenile court's determination, examine the record in a light most favorable to the juvenile court's findings and conclusions, and indulge all legitimate inferences to uphold the court's order. (*In re Brison C.* (2000) 81 Cal.App.4th 1373, 1379; *In re Tania S.* (1992) 5 Cal.App.4th 728, 733). Under the substantial evidence rule, "[w]e do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts. [Citation.] The judgment [or order] will be upheld if it is supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence. [Citation.]" (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

### 2. *Applicable Law*

---

[3]     Some courts have applied the abuse of discretion standard of review to a juvenile court's order regarding reunification services. (See, e.g., *In re Angelique C.* (2003) 113 Cal.App.4th 509, 523-524.) We apply the substantial evidence standard of review.

"'Reunification services implement "the law's strong preference for maintaining the family relationships if at all possible."'" [Citation.] Therefore, reasonable reunification services must be offered to a parent. [Citation.] The Agency must make a good faith effort to develop and implement reasonable services responsive to the unique needs of each family. [Citation.] The effort must be made, in spite of difficulties in doing so or the prospects of success. [Citation.] The adequacy of the reunification plan and of the Agency's efforts to provide suitable services is judged according to the circumstances of the particular case. [Citation.] [¶] . . . [¶] Where a child is removed from a parent's custody in a dependency proceeding and reunification services are ordered, the general rule, stated in California Rules of Court, rule 5.695(h)(5), is that 'the court must order visitation between the child and the parent or guardian for whom services are ordered. Visits are to be as frequent as possible, consistent with the well-being of the child.'" (*Christopher D. v. Superior Court* (2012) 210 Cal.App.4th 60, 69.)

### 3. Analysis

G.L.'s counsel did not argue in the juvenile court that the Department did not provide reasonable reunification services. Thus, the issue is forfeited. "A parent's failure to raise an issue in the juvenile court prevents him or her from presenting the issue to the appellate court." (*In re Elijah V.* (2005) 127 Cal.App.4th 576, 582; accord, *In re Sheena K.* (2007) 40 Cal.4th 875, 880-881 [even constitutional rights may be forfeited by the failure to make timely assertion of the right before the dependency court]; *In re Dakota H.*[, *supra*,] 132 Cal.App.4th [at p.] 221 [a "party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court"]; *In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court"], superseded on other grounds as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 962-963; *In re Dakota S.* (2000) 85 Cal.App.4th 494, 502 [failure to raise an issue in the juvenile court prevents appellant from presenting the issue on appeal].)

16

In any event, there is sufficient evidence the services provided were reasonable. With the exception of the few days prior to the November 18, 2015, contested six-month review hearing, mother was provided with all of the visitation to which she was entitled. In addition, mother's case plan included that she participate in a drug and alcohol program with aftercare, random or on demand drug and alcohol testing, a 12-step program, parenting classes, and individual counseling to address case issues. The Department assisted mother in participating in these programs. The Department provided mother with reasonable reunification services despite not seeking a court order that permitted the limitations on mother's visitation immediately prior to the November 18, 2015, contested six-month review hearing.

Even if juvenile court erred in finding that the Department provided mother with reasonable reunification services, mother failed to establish that she was prejudiced by her not being allowed to visit with G.L. for two days, and having a monitored as opposed to an unmonitored visit on one day. Indeed, the juvenile court agreed with P.H.'s actions limiting mother's visitation following mother spending the night with father, saying it was "glad" P.H. was "being very protective of [G.L.]"

**DISPOSITION**

The juvenile court's order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

RAPHAEL J. *

We concur:

KRIEGLER, Acting P.J.

BAKER, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.